**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,    :
            :
    v.       :  ID No. 1410017907
            :  In and For Kent County
OLIVER HACKENDORN   :
            :
    Defendant.   :

Submitted: December 11, 2015
Decided: January 13, 2016

**OPINION AND ORDER**

*Upon Defendant's Motion to Suppress*
***DENIED***

David B. Snyder, Esquire, Department of Justice, for the State of Delaware.

John S. Malik, Esquire, Wilmington, Delaware, for the Defendant.

Clark, J.

**I. INTRODUCTION**

The issues before the Court involve Oliver Hackendorn's ("Defendant's") motion to suppress the reading of his blood alcohol test following his arrest for driving under the influence. Defendant argues that (1) the four corners of the affidavit submitted in support of a warrant to draw blood failed to establish probable cause; and (2) even if the affidavit was sufficient, the search warrant should be voided because it contained intentional falsehoods or omissions in reckless disregard of the truth. As the Court held at the hearing, the four corners of the affidavit establish

probable cause. As further set forth herein, this finding is not invalidated by omissions in the affidavit filed in support of the warrant. Accordingly, Defendant's Motion to Suppress is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant filed a motion to suppress the result of his blood alcohol test following his October 26, 2014 arrest for driving under the influence ("DUI") of alcohol. The Court held a suppression hearing on December 3, 2015. The State presented the testimony of Officers Fraley and Baker from the Harrington Police Department. After oral argument, the Defendant supplemented the record with additional materials on December 11, 2015. The hearing focused on a *Franks v. Delaware* inquiry.[1] The following constitute the Court's findings of fact applicable to this inquiry.

On October 26, 2014, Patrolman Fraley ("Fraley") noticed that the registration plate light was not functioning properly on a black Dodge Ram with the Delaware license plate C59857 ("the vehicle"). After the vehicle made a U-turn, Fraley testified that he observed the vehicle cross the white fog line multiple times. Fraley further testified that he activated his emergency equipment, then conducted a traffic stop of the vehicle. He stated that he could smell a strong odor of alcohol when he approached the cab of the vehicle. Fraley then contacted Corporal Baker ("Baker"), informing him of a potential DUI violation.

Baker arrived at the scene within five minutes of the stop. Baker then conducted three separate standardized field sobriety tests and a portable breathalyzer test ("PBT") that he testified that he was certified to conduct. The standardized tests

---

[1] 438 U.S. 154 (1978).

were the horizontal gaze nystagmus ("HGN"), the one-leg stand, and the walk-and-turn. Defendant, according to Baker, failed all three of the field sobriety tests as well as the PBT.

Baker first administered the HGN test, which he testified that he was aware required roughly two minutes and eight seconds to fully complete, if done correctly. However, Baker acknowledged that he administered the test in approximately forty-four seconds to no more than a minute. Baker then testified that he knew this was not consistent with National Highway Traffic Safety Administration ("NHTSA") standards and also admitted he was not proficient with this test. Nevertheless, Baker indicated in the affidavit that Defendant failed the HGN.

Baker administered the walk-and-turn and the one-leg stand. Baker testified that he asked Defendant if he had any physical disabilities before conducting those tests. Defendant stated that he previously had two broken legs. Baker believed that the Defendant had the ability to perform the tests. Although when confronted with the NHTSA manual's language referencing physical disabilities, Baker testified that he believed he conducted the walk-and-turn and one-leg stand correctly and accurately, resulting in the Defendant failing both exams.

Finally, Baker conducted the PBT which resulted in a reading of .135. Baker testified that he knew the required waiting time to administer the PBT exam was fifteen minutes. He further admitted that he knew the test to be invalid for court purposes if there was not a sufficient waiting period. Baker confirmed that he conducted the PBT exam approximately fourteen minutes after Defendant was stopped, which was less than the required fifteen minutes. Finally, he testified that he has never waited the full fifteen minutes before administering a PBT in any DUI case. Baker's reasoning for always administering the PBT as quickly as possible included roadside safety concerns. The Defendant was then taken into custody and

3

refused to take an Intoxilyzer breath test. The Officer applied for a search warrant to obtain a blood sample from Defendant, which included the affidavit from Baker regarding the results of the field sobriety tests. Namely, Baker's affidavit indicated that the Defendant failed the PBT, the HGN, the walk-and-turn, and the one-leg stand. The affidavit also stated that the Defendant's eyes were blood shot, his vehicle crossed over the fog line several times, and the Defendant exhibited a moderate odor of alcohol.

A Magistrate at Justice of the Peace Court No. 7 found that there was probable cause based on these representations and issued the warrant. Pursuant to the blood draw, Defendant's BAC registered .14. Defendant was charged with driving under the influence, failure to have registration plate light, and failure to remain within a single lane.

### III. STANDARD OF REVIEW

In a Motion to Suppress challenging the validity of a search warrant, the defendant bears the burden of proving that the challenged search or seizure was unlawful.[2] The burden of proof in a motion to suppress is by a preponderance of the evidence.[3] At a suppression hearing, the trial judge sits as the trier of fact, and determines the credibility of witnesses.[4]

In a *Franks* hearing challenging the accuracy of statements made in a probable cause affidavit, a defendant may request a hearing only upon a substantial preliminary showing that "(1) the affiant made a false statement in the warrant either knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false

[2] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).

[3] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).

[4] *Turner v. State*, 957 A.2d 565, 570-71 (Del. 2008).

4

statement is necessary to the finding of probable cause."[5]

In order to justify a hearing, "there must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."[6] The specific portions of the affidavit that are claimed to be false must be identified and be accompanied by a statement of supporting reasons.[7] Claims of negligence or innocent mistake are insufficient.[8] Furthermore, "the [C]ourt shall not receive evidence on motions challenging the manner of execution of a search warrant or the veracity of a sworn statement used to procure a search warrant unless the motions are supported by affidavits, or their absence is satisfactorily explained in the motion, and the allegedly false statement is necessary to the finding of probable cause."[9] Finally, the affidavit is presumed to be valid and the burden to overcome the presumption of validity of the affidavit lies with the defendant.[10]

The case at hand involved what is more accurately described as a reverse-*Franks* situation. Namely, when omitted information is the basis of a challenge to a warrant, the defendant must establish by a preponderance of the evidence that the police knowingly and intentionally, or with reckless disregard for the truth, omitted information material to a finding of probable cause. Upon such a finding, the reviewing court will add the omitted information to the affidavit and examine the affidavit with the newly added information to determine whether the affidavit still

---

[5] *State v. Campbell*, 2015 WL 5968901, at *7 (Del. Super. Oct. 5, 2015).

[6] *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

[7] *Id.*

[8] *Id.*

[9] Del. Super. Ct. Crim. R. 41.

[10] *Franks*, 438 U.S. at 154.

5

gives rise to probable cause."[11]

## IV. DISCUSSION

The Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution, protect individuals from unreasonable searches and seizures.[12] Under these provisions, a search warrant may be issued only upon a finding of probable cause.[13] A blood draw, absent consent or exigent circumstances, requires a warrant.[14]

Defendant argued that (1) the four corners of the affidavit submitted for a warrant to draw blood failed to set forth probable cause, and (2) even if the affidavit is sufficient, the search warrant should be voided because it omitted information in reckless disregard of the truth that invalidates a finding of probable cause. The State counters that the information in the affidavit was sufficient to establish probable cause and that, at best, any omission of information was due to mere negligence and not a reckless disregard for truth. The Court finds that in this case the affidavit contained reckless omissions. However, when considering these omissions to be included within the affidavit, the "revised" affidavit adequately alleges facts evidencing probable cause. Defendant's motion to suppress is therefore DENIED.

**A. The four corners of the affidavit establish probable cause.**

Defendant's first argument was that the four corners of the affidavit itself did not establish probable cause because it contained statements that were too conclusory.

---

[11] *Sisson v. State*, 903 A.2d 288, 300 (Del. 2006).

[12] *State v. Holmes*, 2015 WL 5168374, at *3 (Del. Super. Sept. 3, 2015)

[13] *U.S. Const. amend.* IV; *Del. Const. art.* 1, § 6.

[14] *Missouri v. McNeeley*, 133 S. Ct. 1552 (2013).

6

An affidavit submitted in support of a search warrant application must set forth facts within its four corners that are sufficient for a neutral magistrate to conclude that probable cause exists.[15] The magistrate must apply a totality of the circumstances analysis to determine if there is a fair probability that the Defendant has committed a crime.[16] In doing so, he or she may make reasonable inferences from the factual allegations located therein.[17] Furthermore, a magistrate's determination of probable cause must be paid great deference by a reviewing court.[18]

Defendant argues that the reasoning in a Court of Common Pleas decision, *State v. Cajthaml*, is persuasive and if followed, mandates suppression. That decision provides that an officer should explain, in his or her affidavit, the tests performed and the defendant's performance on each test.[19] Defendant argues that Baker, in his affidavit, did not explain how or why Defendant's performance on each test suggested impairment. Accordingly, Defendant argues that the magistrate reviewing the warrant application did not have a proper basis to assess Defendant's performance and therefore could not have found probable cause.

This Court held at the hearing, without comment on the Court of Common Pleas' reasoning that the affidavit in *Cajthaml* is distinguishable from the affidavit in the case at hand. Namely, the totality of the statements in the affidavit in *Cajthaml* with regard to the field tests, was that the officer had Defendant perform field sobriety

---

[15] *Lambert v. State*, 110 A.3d 1253, 1255 (2015) (citing *Rivera v. State*, 7 A.3d 961, 966 (Del. 2010)).

[16] *Rybicki v. State*, 119 A.3d 663, 669 (2015).

[17] *Id.* at 668-69.

[18] *Id.* at 668.

[19] *State v. Cajthaml*, C.A.No. 135015136, at *3 (Del. Com. Pl. Dec. 16, 2013).

tests which she subsequently failed.[20] There was no mention of a PBT being administered, which NHTSA field tests were administered, or the individual results of those tests.

In the case at hand, the statements in the affidavit contain significantly more detail, and accordingly are not as conclusory as those in the affidavit at issue in *Cajthaml*. Here, the affidavit identified the specific tests that Defendant performed and allegedly failed. The affidavit at hand also references a PBT reading of .135, which was not referenced in *Cajthaml*. Although the affidavit does not state that the attesting officer was NHTSA certified, Delaware courts at every level of the criminal justice system have examined such tests on many occasions. Reference in the affidavit to a failed field sobriety test known to be a NHTSA test is sufficient to include that fact in the analysis. Likewise, a sworn statement regarding a PBT result need not include a recital that the devise was calibrated, the officer was trained in its operation, or that the waiting period was observed. In the Court's view, a magistrate reviewing the affidavit in this case, given the great deference that is due, cannot be said to have erred in finding probable cause to issue the warrant.

## B. Defendant specifically and sufficiently alleged material and reckless omissions, thus warranting a reverse-*Frank's* Hearing.

The State opposed opening the inquiry through a factual hearing. The State is correct in that a *Frank*'s or reverse-*Frank*'s hearing is not automatically granted upon request. Namely, "[t]here must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."[21] The specific portions of the warrant affidavit that are claimed to be false

---

[20] *Cajthaml,* C.A.No.135015136, at *3.

[21] *Franks,* 438 U.S. at 171.

8

must be identified and be accompanied by a statement of supporting reasons.[22] "Allegations of negligence or innocent mistake are insufficient."[23] Furthermore, any challenge to "the veracity of a sworn statement used to procure a search warrant" must be supported by affidavits, or a satisfactory explanation of their absence. [24]

In a reverse-*Franks* situation, if the "defendant establishes by a preponderance of the evidence that the police knowingly and intentionally, or with reckless disregard for the truth, omitted information material to a finding of probable cause, the reviewing court will add the omitted information to the affidavit and examine the affidavit with the newly added information to determine whether the affidavit still gives rise to probable cause."[25]

Here, Defendant had very specific challenges and allegations regarding all three NHTSA standardized tests and the PBT results. The Defendant identified specific lines in the affidavit that contained allegedly materially false statements. Defendant specifically identified lines 8, 9 and 10 in the affidavit. Line 8 states that the Defendant failed an HGN test. Defendant argues that the officer omitted from the affidavit the fact that test was administered with the use of a flashlight to illuminate the area, instead of in a well-lit area, whether the officer was properly trained to administer the HGN test, and that the officer did not follow proper procedures. Line 9 states that the Defendant failed the walk-and-turn test and the one-leg stand tests. Defendant alleges that the Officer omitted from the affidavit that he was not NHTSA trained and that he did not comply with the standards for administering those tests.

---

[22] *Id.*

[23] *Id.*

[24] Del. Super. Ct. Crim. R. 41.

[25] *Sisson,* 903 A.2d at 300.

Finally, as to line 10, Defendant alleges that the officer failed to observe the required waiting period for a PBT, which gave a purported reading of .135. The Defendant argues that the officer omitted from the affidavit the fact that the full fifteen minute observation period was not observed, and that the device was not properly calibrated. Defendant states that these omissions recklessly disregarded the truth and when added, compel the Court to disregard those test results and review only the balance of the information for probable cause.

Furthermore, the Defendant provided a satisfactory explanation, under the circumstances, as to the absence of any affidavit supporting such allegations. Defendant correctly recognized that at the stop, there were only the Defendant and the two officers. The Defendant was the one being investigated for a DUI offense and had no specific knowledge regarding NHTSA procedures. While an affidavit alleging falsities or materially reckless omissions is the gold standard , under the circumstances of this case, the Defendant adequately supported his request for a hearing. This matter involves video proof of the length of the observation period, as well as the procedures used during the field tests. Based on review of the video, the Defendant specifically alleged material omissions that, if included, would have compelled a magistrate to deny the warrant based on a lack of probable cause. These specific allegations constituted a sufficient offer of proof. Consequently, the Court proceeded with the hearing.

**C. After a hearing, the Court finds some of the statements within the affidavit to be misleading because of recklessly omitted information; however, after**

**considering the omissions which invalidate some of the field tests, there remains sufficient information in the affidavit for a finding of probable cause.**

The reverse-*Franks* standard of an omission with reckless disregard for the truth was not defined by the Supreme Court in *Franks*, and was left to the lower courts to define.[26] The Second and Third Circuits have attempted to define the standard.[27] Combining the attempts of both Federal Circuits, the Delaware Supreme Court articulated the standard as one questioning whether an officer withholds information that is critical to the probable cause determination that "any reasonable person would have known . . . was the kind of thing the judge would wish to know."[28]

Recklessness is a mental state that "involves a **subjective** realization of a risk of a particular result and a conscious decision to ignore it, but it does not involve intentional conduct, because one who acts recklessly does not have a conscious objective to cause a particular result."[29] In Delaware, 'recklessness' is defined as "when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[30] This definition of 'reckless' is used in both the criminal and civil

---

[26] *Id.* at 301.

[27] *Id.*

[28] *Id.* (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993)).

[29] 21 Am. Jur. 2d Criminal Law § 127 (emphasis added).

[30] 11 *Del. C.* §231(e).

11

contexts.[31] The Superior Court, in *State v. Pardo,* recognized that in order for conduct to be considered 'reckless', an individual must be conscious of a substantial and unjustifiable risk, where 'conscious' is defined as to "subjectively know or feel."[32] In the parallel civil application of the definition, reckless conduct amounts to a conscious indifference.[33]

The Defendant argues that 'reckless' for *Franks* purposes is generally defined as "knew or should have known" and that the Court should view the evidence solely through that lens. Ignoring the subjective component in that way, however, would alter the inquiry to one of negligence. When assessing recklessness in any context, there is both a subjective portion to the inquiry and objective portion of the analysis. Namely, the officer must (1) subjectively disregard the falsity of the statements, and (2) the omitted statement must be objectively important to a magistrate.

Baker's testimony makes it clear that he knew and understood that the PBT has a fifteen minute waiting period, and even more critically that if it was not followed, the result should not be considered valid. Furthermore, it was clear through the testimony that Baker knew and understood the timing requirements and procedures for the HGN test yet he did not follow them. This information (i.e. that an officer representing a fail on an objective test that the officer knew was not valid or reliable) is information that a reasonable officer would know a judge would want to know when making a probable cause determination. It is clear from the record that Baker knew the information was important, and that he was not completing the exams according to NHTSA standards, yet still chose to not include that information in the

---

[31] *State v. Pardo*, 2015 WL 6945310, at *4 (Del. Super. Nov. 9, 2015). *See also Jardel Co., Inc. V. Hughes*, 523 A.2d 518, 530-31 (1987)(recognizing the subjective nature of the inquiry).

[32] *Pardo*, 2015 WL 6945310, at *4.

[33] *Jardel Co., Inc.*, 523 A.2d at 530.

affidavit. Accordingly, his (1) subjective, conscious decision to not disclose these facts (2) that a reasonable officer would have known a magistrate would want to know negates the purported result of those field tests in this probable cause determination.

Following the reverse-*Franks* standard, the information that was omitted through a reckless disregard for the truth must be included in the consideration of the PBT and HGN test in order to determine probable cause. Baker's knowledge that he was not proficient with the HGN would cause any reasonable magistrate to give no weight to that result. Baker's understanding that the PBT should not be considered valid given the lack of the required observation time, coupled with his report that the PBT was a fail, likewise compels disregard of that test's result. While the Court does not find these omissions to be intentional, not disclosing them in the affidavit constitutes reckless omissions from the affidavit. It is clear to this Court that the HGN test and the PBT should not be considered in the probable cause analysis.

However, Baker administered the walk-and-turn and the one-leg stand tests in a manner that he believed were accurate. When questioned about his understanding regarding their validity, he testified that he believed these tests were validly given and should qualify as failed field tests. The argument that the Defendant had two broken legs making the results of the tests invalid is not persuasive to this Court. Baker questioned the Defendant about his current occupation as a mason and was told he was able to perform that work. Due to the nature of the Defendant's occupation, it was more than reasonable to believe that the Defendant was capable of completing these exams. At the hearing, when watching the video, Defendant's gait did not seem compromised. It also did not seem compromised while he was performing the tests.

After considering information that should have been included in the affidavit, there is still sufficient evidence cited to establish probable cause for the blood draw.

Namely, a failed walk-and-turn test, a failed one-leg stand test, a moderate odor of alcohol, blood shot eyes, and some-what erratic driving, support a finding of probable cause without considering the HGN and PBT test results.

## V. CONCLUSION

**WHEREFORE**, for the reasons cited, the Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**.

<u>/s/Jeffrey J Clark</u>
Judge