IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HEATHER J. RYBICKI, | § | |
| | § | No. 332, 2014 |
| Defendant-Below, | § | |
| Appellant. | § | Court Below: |
| | § | Superior Court of the |
| v. | § | State of Delaware, in and for |
| | § | New Castle County |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1306019828 |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: May 20, 2015
Decided: July 20, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Joseph A. Hurley, Esquire (*argued*), Wilmington, Delaware, for Appellant.

Andrew J. Vella, Esquire (*argued*), Department of Justice, Wilmington, Delaware, for Appellee.


**VALIHURA**, Justice:

# I. INTRODUCTION

Appellant Heather J. Rybicki ("Rybicki") was convicted by a jury of driving under the influence of alcohol ("DUI").[1] Rybicki was sentenced to two years of Level V incarceration, suspended after three months for one year and six months of Level IV home confinement, suspended after six months for one year of Level III probation. On appeal, Rybicki raises five issues. She argues that (1) there was no probable cause to issue the search warrant to obtain a blood sample used to determine her BAC; (2) there was no probable cause for her warrantless arrest; (3) absent the BAC evidence, there was insufficient evidence for conviction; (4) the State did not lay a sufficient foundation for the BAC evidence; and (5) two jury instructions given by the trial court were improper comments on the evidence. We disagree, and for the reasons stated herein, AFFIRM the judgment below.

# II. FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2013, Rybicki was arrested and charged with DUI following a single-vehicle accident, during which she lost control of her car. John Klingler ("Klingler"), who was driving on the highway, witnessed a cloud of dust and Rybicki's vehicle settle in the lanes of traffic coming toward him. Her vehicle was

---

[1] 21 *Del. C.* § 4177(a).

1

"almost facing the wrong way."[2] Klingler approached Rybicki as she was attempting to restart her car. He noted that she seemed disoriented, as if she were in a state of shock. Klingler testified at trial that Rybicki smelled of alcohol, slurred her words, and "became very unhappy" when he told her that he had called 911.[3] He noticed the smell of alcohol when he was two to three feet from Rybicki's window.

Newark Police Officer Corporal Joseph Kendrick ("Corporal Kendrick") responded to the 911 call. He found Rybicki seated in the driver's seat of her vehicle. Rybicki's vehicle was in the northbound lanes facing west, perpendicular to the lanes of traffic. Corporal Kendrick immediately noted a strong odor of alcohol as he spoke with Rybicki. Rybicki could not explain how the accident happened, but complied with Corporal Kendrick's instructions without staggering or slurring her speech.[4] Rybicki refused to submit to field sobriety, preliminary breath, or Intoxilyzer tests, but conceded at trial that she had been drinking on the night of her arrest. She testified that she had consumed approximately four beers over a four and one-half hour period.

---

[2] App. to Appellant's Opening Br. at A38.

[3] *Id.* at A39.

[4] Rybicki struggled to produce documents requested by Corporal Kendrick, and was seen passing over the requested documents as she searched for them. When asked for her driver's license, Rybicki gave Corporal Kendrick her state identification card and not her driver's license.

2

Corporal Kendrick obtained a search warrant to compel Rybicki's submission to a blood test in order to determine Rybicki's BAC. The probable cause affidavit attached to the application for the search warrant provided:

> This Affiant responded to a one vehicle accident at S. College Ave. just south of Rt. 4. This Affiant observed the suspect's vehicle, a 2010 black nissan rogue, Delaware registration # 743036, went up and over a grass embankment from the park and ride parking lot striking the curb and coming to rest facing w/b across the n/b lanes on S. College Ave. This Affiant contacted the driver, Heather J. Rybicki, and could smell an odor of alcoholic beverages emanating from her breath. Ms. Rybicki refused all field sobriety tests, preliminary breath test and Intoxilyzer 5000.
>
> WHEREFORE, your affiant believes there is probable cause that the above-named defendant is presently under the influence of alcohol and/or drugs and requests a search warrant to draw the above-named defendants blood be issued.[5]

After a magistrate judge issued the search warrant, a phlebotomist drew Rybicki's blood in an interview room at the police station using a sealed kit. At the time her blood was drawn, Rybicki's BAC was 0.18.

On November 8, 2013, Rybicki moved to suppress the BAC evidence, arguing that the search warrant authorizing the blood draw was fatally defective because it did not suggest a fair probability that Rybicki was under the influence of alcohol or drugs while driving. On December 19, 2013, Rybicki filed a second motion to suppress based on a theory that there was no probable cause for her

---

[5] App. to Appellant's Opening Br. at A30.

arrest. Both of these motions were denied by the trial court. Rybicki filed a motion to reargue on January 16, 2014, but the trial court declined to hear reargument.

As a result, the BAC evidence was introduced at Rybicki's two-day trial in April 2014. A jury found Rybicki guilty of DUI under 21 *Del. C.* § 4177(a), although it was not clear whether the jury found that she was guilty of driving while impaired under § 4177(a)(1) or having a prohibited BAC within four hours of driving under § 4177(a)(5).

## III. ANALYSIS

On appeal, Rybicki first argues that there was no probable cause to issue a search warrant for the BAC evidence. Generally, a trial court's denial of a motion to suppress after an evidentiary hearing challenging the sufficiency of a search warrant is reviewed for an abuse of discretion.[6] "Where the facts are not in dispute and only a constitutional claim of probable cause is at issue, this Court's review of the Superior Court's ruling is *de novo*."[7] However, as we explained in *State v. Holden*, "[a] court reviewing the magistrate's determination has the duty of ensuring 'that the magistrate had a substantial basis for concluding that probable

[6] *Rivera v. State*, 7 A.3d 961, 966 (Del. 2010).

[7] *State v. Holden*, 60 A.3d 1110, 1113 (Del. 2013) (quoting *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)).

4

cause existed.'"[8] "A magistrate's determination of probable cause 'should be paid great deference by reviewing courts' and should not, therefore, 'take the form of a *de novo* review.'"[9] "'Notwithstanding this deference,' the reviewing court must determine whether the magistrate's decision reflects a proper analysis of the totality of the circumstances."[10]

Before issuing a search warrant, a magistrate must find that probable cause exists that evidence of a crime will be found in the place to be searched.[11] The magistrate may only consider the information contained within the four corners of the affidavit.[12] "[A] neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit."[13] For an affidavit to be sufficient, it must "set forth facts permitting an impartial judicial officer to *reasonably* conclude that the items sought would be found at the location."[14] The officer is "only required to present facts which suggest, when *those facts* are viewed under the totality of the circumstances, that there is a fair probability that

---

[8] *Id.* at 1114 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

[9] *Id.*

[10] *Id.* (quoting *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008) (citing *U.S. v. Leon*, 468 U.S. 897, 915 (1984))).

[11] *Id.* (citing *Gates*, 462 U.S. at 237).

[12] *LeGrande*, 947 A.2d at 1107.

[13] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

[14] *Holden*, 60 A.3d at 1115 (emphasis in original) (quoting *Jones v. State*, 28 A.2d 1046, 1057 (Del. 2011)).

5

the defendant has committed a crime."[15]  The affidavit need not rule out potentially innocent explanations for a fact.[16]  Probable cause may be found so long as the facts presented in the affidavit are "*sufficient in themselves* to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."[17]

The facts set forth in the affidavit must provide a sufficient indication of the timing of events to allow the issuing judge to conclude that the evidence remains in the place to be searched.[18]  This Court has recognized that "the basic (and, so far as we know, unanimous) rule is that failure to state when the alleged facts occurred is fatally defective."[19]  Without temporal facts, the magistrate has no basis for determining whether the information supporting a finding of probable cause is stale.[20]  This concern is most acute when the evidence is likely to be moved or destroyed.[21]  When timing is unclear, a magistrate is "free to draw upon his

---

[15] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993) (emphasis in original) (citing *Jarvis v. State*, 600 A.2d 38, 42-43 (Del. 1991)).

[16] *Id.* (observing that "[t]he possibility that there may be a hypothetically innocent explanation for each of several facts revealed during the course of an investigation does not preclude a determination that probable cause exists for an arrest").

[17] *Id.* (emphasis in original) (internal quotations and citations omitted).

[18] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975) ("Probable cause must be based on current information, not conjecture, for stale information will not support a finding of probable cause.").

[19] *Id.* (internal citations omitted).

[20] *Id.* (finding that an affidavit was insufficient to support probable cause that evidence of a burglary would be found in the defendant's residence "because there was no chronology in the affidavit").

[21] *Sisson*, 903 A.2d at 297.

commonsense [*sic*] to infer reasonably from the facts alleged" that the objects to be seized remain on the property to be searched.[22]

Here, the affidavit described the unusual nature of the one-vehicle accident where Rybicki's vehicle was discovered over the grass embankment, perpendicular to the direction of traffic. It indicated that Rybicki smelled of alcohol and that she refused all field sobriety, preliminary breath and Intoxilyzer tests. Corporal Kendrick also stated in the affidavit that he "believes there is probable cause that [Rybicki] is *presently* under the influence of alcohol and/or drugs."[23] Further, the affidavit included two time stamps: June 22, 2013 2:40 and June 22, 2013 2:48.[24] Based on the information contained in the affidavit, and because BAC evidence is constantly deteriorating and diminishing with time as the body naturally filters alcohol out of the system, the magistrate could reasonably infer that Corporal Kendrick had probable cause to believe that Rybicki was driving under the influence of alcohol and that she was presently intoxicated. We acknowledge, however, that such an inference relies on the assumption that a responding officer

---

[22] *Id.* at 297-98 (finding that probable cause existed despite a potential staleness problem because the affidavit provided a date on which an email, which was evidence of a crime, was discovered, and the magistrate could reasonably infer that the crime occurred within a short time prior to the discovery).

[23] App. to Appellant's Opening Br. at A30 (emphasis added).

[24] The time stamps appear to be notations made by the fax machine used to transmit the affidavit to and from the Newark Police Department.

would have no apparent reason to delay presentment of the probable cause affidavit; indeed the nature of Delaware's DUI law encourages prompt presentment because delays could result in a falsely low BAC level.[25] Thus, although a reasonable question, we decline to find on this record that the facts set forth in the affidavit were insufficient.[26]

Further, the affidavit provided sufficient information to establish probable cause to obtain Rybicki's BAC. The affidavit stated that Corporal Kendrick arrived at the scene of a serious one-vehicle accident to find Rybicki disoriented and smelling of alcohol. It appeared from the scene of the accident that Rybicki had lost control of her vehicle and had crossed over a grass embankment ending up perpendicular to oncoming traffic. Rybicki also refused to submit to field sobriety, preliminary breath, and Intoxilyzer tests. Any one of these facts, considered in isolation, may be insufficient to establish probable cause. However, the totality of the circumstances presented, and the rational inferences drawn therefrom, reveal that the police possessed a quantum of trustworthy facts sufficient to warrant a

---

[25] *See* 21 *Del. C.* § 4177(g).

[26] Defense counsel stated at oral argument that Rybicki was not challenging the affidavit on the grounds that it lacked a sufficient indication of the timing of events. Following oral argument, defense counsel attempted to raise the argument in a Motion for Reargument. This Court denied the motion. Our decision as to the sufficiency of the warrant is not based upon counsel's concession at argument.

person of reasonable caution to conclude that probable cause existed to believe that Rybicki was driving under the influence of alcohol at the time of the accident.[27]

Rybicki next argues that there was no probable cause for her arrest. This Court reviews a denial of a motion to suppress for an abuse of discretion.[28] Factual findings are reviewed "for whether the trial judge abused his or her discretion in determining whether sufficient evidence supported the findings and whether those findings were clearly erroneous."[29] Where the underlying facts are not in dispute, a finding of probable cause to arrest for driving under the influence constitutes a legal determination that is subject to *de novo* review.[30]

In order to establish probable cause for an arrest predicated on an alleged violation of a DUI statute, the arresting officer must articulate facts considered in the totality of the circumstances that suggest there is a fair probability that the driver is under the influence.[31] A driver is "under the influence" when he or she is, "because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been, either mentally or physically, to exercise clear

---

[27] *See Maxwell*, 624 A.2d at 931.

[28] *Miller v. State*, 4 A.3d 371, 373 (Del. 2010).

[29] *Id.*

[30] *See Lopez-Vazquez v. State*, 956 A.2d 1280, 1284-85 (Del. 2008); *Maxwell*, 624 A.2d at 928.

[31] *Lefebrve v. State*, 19 A.3d 287, 292-93 (Del. 2011).

judgment, sufficient physical control, or due care in the driving of a vehicle."[32]  In the specific context of DUI arrests, probable cause is generally based on the arresting officer's observations of the arrestee, which may include field sobriety tests.[33]  An officer need not rule out potentially innocent, alternative explanations for a driver's conduct.[34]

We have previously stated that "a traffic violation combined with an odor of alcohol, standing alone, do[es] not constitute probable cause to arrest [a] driver for a DUI offense."[35]  Yet, when "rapid speech, admission to drinking, bloodshot and glassy eyes and a failed alphabet test" are added to a traffic violation and odor of alcohol, the probable cause standard has been satisfied.[36]

Here, the Superior Court concluded that "the nature of the accident, combined with the officer's personal observation of an odor of alcohol on Defendant's breath, constitute probable cause to believe that Defendant was under the influence of alcohol at the time of the accident."[37]  In our review of the totality of the circumstances, we consider the facts referenced in the Superior Court's

---

[32] 21 *Del. C.* § 4177(c)(11).

[33] *Lefebvre*, 19 A.3d at 293.

[34] *Id.*

[35] *Id.* (citing *Esham v. Voshell*, 1987 WL 8277 (Del. Super. Mar. 2, 1987)).

[36] *Id.* (citing *Bease v. State*, 884 A.2d 495, 499-500 (Del. 2005)).

[37] *State v. Rybicki*, 2014 WL 637004, at *1 (Del. Super. Jan. 14, 2014).

ruling, along with the facts included within the four corners of the affidavit, including Rybicki's refusal to submit to the "field sobriety tests, preliminary breath test and Intoxilyzer 5000." The totality of these circumstances suggests that a fair probability existed that Rybicki was driving while under the influence. Accordingly, we conclude that the Superior Court did not err in determining that there was probable cause to arrest Rybicki for DUI.

Rybicki next contends that if the BAC evidence should have been suppressed, then the remaining evidence is insufficient to support her conviction. First, the Superior Court did not abuse its discretion in denying Rybicki's motion to suppress the BAC evidence. Second, Rybicki did not present this argument to the trial court below, and thus, we decline to review it for the first time on appeal.[38]

Next, Rybicki argues that the State did not lay a proper foundation for the introduction of the BAC evidence. She contends, for the first time on appeal, that this Court should hold that the State was required to show that a BAC test kit was sterile in order to establish the accuracy and reliability of the results.

At trial, defense counsel objected that the State had failed "to lay a proper legal foundation for the introduction of blood test results."[39] But defense counsel

---

[38] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995).

[39] App. to Appellant's Opening Br. at A52.

11

refused to articulate any specific objection beyond that. The trial court asked, "What are they missing?"[40] Defense counsel replied that he was not "here to teach" the prosecution so that they could "cure the problem."[41] The trial court continued to press: "Well, you expect me to rule on it, I have to give the basis of my ruling."[42] Defense counsel responded, "I know you're going to overrule me because I haven't articulated a specific reason of the objection so the record will be what the record is."[43] The trial court then overruled the objection "because [it did not] have any basis upon which to sustain it."[44]

Generally, this Court reviews a trial court's evidentiary rulings for an abuse of discretion.[45] The failure to timely object to the admission of evidence based upon a lack of foundation is typically reviewed only for plain error.[46] "However, if the record reflects that the decision not to object at trial was a deliberate tactical maneuver by defense counsel and did not result from oversight, then that action

---

[40] *Id.* at A52.

[41] *Id.* at A52-53.

[42] *Id.* at A53.

[43] *Id.*

[44] *Id.*

[45] *Norwood v. State*, 95 A.3d 588, 594 (Del. 2014).

[46] *Winn v. State*, 1993 WL 144875, at *2 (Del. 1993).

constitutes a true waiver [that precludes plain error review]."[47] Here, there was a general objection, followed by a tactical refusal to provide the court with a specific basis for it.

On appeal, Rybicki points to no Delaware case law or statute requiring the State to demonstrate that the BAC collection equipment was sterile before such evidence may be admissible at trial. There is no indication in the record that suggests that the equipment used was not sterile. Nor is there a statutory provision that expressly requires testimony about the sterility of the equipment used in a blood draw.[48] Instead, Rybicki points to examples where courts in other jurisdictions have adopted this specific foundation requirement for admission of blood test results.[49] Given that Rybicki points to no Delaware authority supporting her objection, she cannot maintain that the specific grounds for her foundation

---

[47] *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009) (internal quotations omitted) (citing *Czech v. State*, 945 A.2d 1088 (Del. 2008)); *see also Bowersox v. Stat*e, 2013 WL 1198083, at *2 (Del. Mar. 25, 2013); *Crawley v. State*, 2007 WL 1491448, at *2 (Del. May 23, 2007); *Baker v. State*, 1993 WL 557951, at *4 (Del. Dec. 30, 1993); *Tucker v. Stat*e, 564 A.2d 1110, 1118-19 (Del. 1989).

[48] *See* 21 *Del. C.* § 4177(h). In fact, the State called Julie Willey, the crime lab director at the Delaware State Police Crime Lab, who testified that the sample of Rybicki's blood that she received from the Newark Police did not appear to be tampered with; the device she used to analyze Rybicki's blood was working properly when the blood was tested; there did not appear to be any contamination of Rybicki's blood; routine maintenance is performed on the testing devices; and the lab participates in proficiency testing.

[49] *See, e.g.*, *People v. Coronado*, 2012 WL 470188 (Mich. Ct. App. Feb. 14, 2012); *State v. Jordan*, 181 S.W.3d 588 (Mo. Ct. App. 2005); *Duncan v. City of Cedar Rapids*, 560 N.W.2d 320 (Iowa 1997).

objection should have been apparent to the trial judge without further explanation. She now asks this Court to consider the issue in the first instance, and to adopt such a foundation requirement after having made the deliberate, tactical decision not to advise the trial court of the specific basis of her objection. We decline to consider this issue now, and conclude that the trial court did not abuse its discretion in denying Rybicki's objection. The trial court was in the best position to rule on the matter and to consider it in the appropriate factual context.[50]

Finally, Rybicki argues that the Superior Court erred in giving two jury instructions that she claims were improper comments on the evidence. The first instruction that Rybicki claims was error discussed the reliability of the BAC testing method (the "Reliability Instruction"):

> In this case, the State presented the results of a test that uses a scientifically sound method of measuring the alcohol content of a person's blood. The State is not required to prove the underlying scientific reliability of the method used. The State is required, however, to establish that the proper blood collection and testing protocols were followed, that the testing device was in proper working order and the testing device was correctly operated by a qualified person at the time of the test.[51]

---

[50] Given Rybicki's refusal to articulate the specific basis for her objection in response to the trial court's repeated inquiries, this Court would also be justified in concluding that Rybicki has waived the argument. *See supra* note 47 and accompanying text.

[51] App. to State's Answering Br. at B48-49.

The second instruction that Rybicki argues was error discussed Rybicki's refusal to submit to sobriety testing (the "Refusal Instruction"):

> In this case, the State contends that the defendant refused to perform standardized field tests as requested by the investigating officer. Evidence of refusal of standardized tests is admissible in a DUI case as a circumstance that may or may not show consciousness of guilt. You may consider this evidence for this limited purpose only. You may not consider evidence of refusal as proof that the defendant probably committed the offense. The evidence of refusal, if proved, must be considered by you in light of all other evidence. Whether or not such evidence shows consciousness of guilt and the significance attached to such evidence are matters solely for your determination.[52]

Although Rybicki claims to have objected to both instructions at trial, her references to the record in support of this claim indicate that defense counsel only objected to the Refusal Instruction and not the Reliability Instruction.

Rybicki claims that the jury instructions at issue violated her constitutional rights and should both be subject to *de novo* review.[53] However, because Rybicki did not object to the Reliability Instruction at trial, and because "[t]he failure to object at trial usually constitutes a waiver of a defendant's right to raise the issue on appeal unless the error is plain," the Reliability Instruction is subject to plain error review.[54]

---

[52] *Id.* at B49.

[53] *Floray v. State*, 720 A.2d 1132, 1137-38 (Del. 1998).

[54] *Probst v. State*, 547 A2d. 114, 119 (Del. 1988).

The Delaware Constitution commands that "[j]udges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."[55] This Court has defined an improper comment on the evidence as follows:

> A forbidden comment on the evidence or a charge as to matters of fact would consist of comments such as an expression of opinion as to the credibility of one witness' testimony as opposed to that of another witness, or the expression of a view that one piece of evidence should be given more weight than is given to specified conflicting evidence. It is not a comment on the evidence for a judge to explain the legal significance which the law attaches to a particular factual finding provided that it is clear to the jury that the judge is not expressing an opinion as to the existence or non-existence of the underlying facts. In explaining the law as it applies to various possible findings of fact[,] the judge states the questions of fact and declares the law.[56]

In *Mullin v. State*, this Court applied the above rule to a jury instruction similar to the Reliability Instruction at issue here.[57] This Court held that the instruction given in that case, to the extent that it addressed the reliability of the Intoxilyzer, was not improper, stating that "[i]t is entirely appropriate for the trial court to explain to the jury that Intoxilyzers are scientifically sound devices for

---

[55] Del. Const. art. IV, § 19.

[56] *Hall v. State*, 473 A.2d 352, 356 (Del. 1984) (internal quotations omitted).

[57] *Mullin v. State*, 2006 WL 2506358, at *1 (Del. Aug. 26, 2006). The pertinent part of the instruction at issue was as follows: "The State presented the results of the Intoxilyzer[,] which uses a scientifically sound method of measuring the alcohol content of a person's blood. The State is not required to prove the underlying scientific reliability of the method used by the Intoxilyzer. The State is required to establish that the Intoxilyzer was in proper working order and that it was correctly operated by a qualified person. . . ." *Id.*

16

measuring blood alcohol level, and that the State need not prove their scientific reliability."[58]

Here, the Reliability Instruction is nearly identical to the instruction endorsed by this Court in *Mullin*. The only difference is that here, the Reliability Instruction was used with a different blood-testing device, namely, a gas chromatograph. Although Rybicki argues that "[t]here is absolutely no recorded case precedent in Delaware where that language was utilized with regard to gas chromatography,"[59] this Court did address such an instruction when a gas chromatograph was used in *Bowersox v. State*.[60] There, Bowersox argued that the jury instructions were incorrect statements of the law, and in particular, that the following language was in error:

> This Court recognizes that the blood-testing device; i.e. the gas chromatograph used in this case employs a scientifically sound method of measuring the alcohol content of a person's blood. The State is not required to prove the underlying scientific reliability of the blood-testing device, but is required to establish that the procedure and testing needs was done pursuant to proper protocol and was performed by a qualified person.[61]

This Court disagreed, and held that "[a]lthough the instruction could have been better phrased, it clarified for the jury that the scientific basis for gas

---

[58] *Id.* at *2.

[59] Appellant Opening Br. at 30.

[60] 2013 WL 1198083 (Del. Mar. 25, 2013).

[61] *Bowersox*, 2013 WL 1198083, at *3.

chromatography was not at issue in the trial," and that "[t]he instruction states in plain language that the State was required to prove the testing was done pursuant to proper protocol by a qualified person."[62] We similarly conclude here that the Superior Court did not commit plain error in giving the Reliability Instruction.

As for the Refusal Instruction, Rybicki did object in the proceeding below. She claims on appeal that although the State is free to argue the significance of her refusal to submit to the tests, the Superior Court's instruction served as an improper "endorsement" of the State's view of the evidence.

We will review a trial judge's charge to the jury by looking at the jury instructions "as a whole."[63] Jury instructions are considered sufficient so long as they are "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[64] Some deficiencies in jury instructions will be tolerated, so long as the instructions are "a correct statement of the substance of the law . . . [and the jury was able to] intelligently perform its duty in returning a verdict."[65]

---

[62] *Id.*

[63] *Probst*, 547 A.2d at 119.

[64] *Id.* (internal quotations and citations omitted).

[65] *Floray*, 720 A.2d at 1138.

In a trial for DUI, the refusal to submit to sobriety testing is admissible "for any relevant purpose, including to show consciousness of guilt."[66] An instruction stating that "evidence of refusal of standardized tests is admissible in a DUI case as a circumstance that may or may not show consciousness of guilt" is a correct statement of the law.

We conclude that the Refusal Instruction was not an improper comment on the evidence, but we also recognize the possibility that placing too much emphasis on certain evidence could, in different circumstances, mislead a jury. Reversal is required only if the "deficiency undermined the ability of the jury to intelligently perform its duty in returning a verdict."[67]

Here, the Superior Court, at the request of defense counsel, made a number of changes to the version of the instruction initially proposed. The language in the initially proposed instruction, based upon our review of the limited portions of the record provided, indicates that it was modified from a formulation stating that a refusal tends to show consciousness of guilt, to state that a refusal "is admissible." Defense counsel agreed that this change was a correct statement of the law. The instruction was further modified to state that a refusal "may or may not" show consciousness of guilt. Defense counsel agreed that using "may or may not"

---

[66] *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010).

[67] *Floray*, 720 A.2d at 1138 (internal quotations and citations omitted).

"would take away the comments -- the court commenting." The initial language was changed further at defense counsel's request to refer to the refusal "to perform standardized field tests," and to exclude reference to the Intoxilyzer 5000 test. Finally, the trial court included the sentence, "You may not consider evidence of refusal as proof that the defendant probably committed the offense," to which defense counsel responded, "Fine. Thank you."

Rybicki continues to press her objection to the Refusal Instruction, but viewing the instructions as a whole -- and given the modifications made by the trial court -- we conclude that Rybicki was not prejudiced by the Refusal Instruction. As is reflected by the painstaking efforts of the Superior Court to make sure that the Refusal Instruction was carefully balanced so as to not encourage the jury to give undue weight to any specific part of the record, refusal instructions have been found by other courts to pose more of a risk than a benefit. Although the record and briefing before us make it hazardous to make broad pronouncements about the utility of such instructions, we do acknowledge that Rybicki's concerns as a general matter are colorable. But as can be seen by any fair reading of the Refusal Instruction ultimately given by the Superior Court, the Refusal Instruction here posed no risk of prejudice to Rybicki, and might have even been favorable to her, as it accurately and carefully instructed the jury on the appropriate way to consider an important part of the record. Given the accuracy and balance of the instruction

20

before us, we decline, on a record as narrow as this one, to find error in the trial court's instruction.  Finally, we observe that such an instruction need not be given in every case.  As with many instructions covering discrete subjects that may not be pertinent in every case, it need only be given in those cases where it is requested and supported by the evidence.

## IV.   CONCLUSION

Based upon the forgoing, the judgment of the Superior Court is hereby AFFIRMED.