**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

STATE OF DELAWARE,       )
)
v.                 )     Case No. 1510000036
)
DEREK C. DIVER,          )
)
Defendant.       )

Submitted: April 18, 2017
Decided: June 13, 2017

William Raisis, Esquire                          Joe Hurley, Esquire
Deputy Attorney General                 1215 King Street
820 N. French Street, 7th Floor         Wilmington, DE 19801
Wilmington, DE 19801                  *Attorney for Defendant*
  *Attorney for the State of Delaware*

## OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS

The defendant, Derek C. Diver ("Defendant"), was charged by Information with Driving Under the Influence ("DUI"), in violation of *21 Del. C. § 4177(a)*, Driving While Suspended, in violation of *21 Del. C. § 2756(a)*, Failure to Have Insurance Identification, in violation of *21 Del. C. § 2188(p)(1)*, and Spe eding, in violation of *21 Del. C. § 4169(b)* following an arrest on October 1, 2015. The Defendant filed a motion to suppress the initial stop and subsequent arrest. On April 18, 2017, the Court held a hearing on Defendant's

Motion, and heard testimony from Corporal Michael Cahall[1] ("Corporal Cahall"), the arresting officer. The State introduced a Motor Vehicle Recording ("MVR") of the initial stop. The Defendant introduced several photographs of the area where he was stopped. At the conclusion of the hearing, the Court reserved decision. For the reasons stated below, Defendant's Motion to Suppress is hereby **DENIED**.

## FACTS

Corporal Cahall testified that on October 1, 2015, while stopped behind Defendant at a red light on Kirkwood Highway, he observed Defendant accelerate from the light at a high rate of speed once it turned green. Corporal Cahall testified that he followed the Defendant westbound on Kirkwood Highway, and observed Defendant slightly sway within his lane of travel. Corporal Cahall testified that he paced Defendant with his marked police vehicle, and measured his speed at 55 mph in a 45 mph posted speed zone. At approximately 1:21 a.m., when Defendant made a left onto Delaware Park Drive, Corporal Cahall activated his lights and initiated a traffic stop.

Corporal Cahall testified that when he approached Defendant's vehicle, he noticed Defendant's eyes were extremely bloodshot and glassy. Corporal Cahall also detected a moderate odor of alcohol emanating from Defendant's breath. Corporal Cahall requested Defendant's registration, driver's license, and proof of insurance. Defendant stated he did not have his driver's license, but was able to provide Corporal Cahall with his passport.

---

[1] Corporal Cahall has been employed with the Delaware State Police Department since 2004, and is responsible for enforcing traffic regulations. Corporal Cahall has received training in DUI detection and is certified by the National Highway Traffic Safety Administration ("NHTSA") to administer field sobriety tests.

2

Defendant also stated the vehicle belonged to his father, and he was unable to locate the vehicle's insurance.

After Corporal Cahall checked Defendant's identification, he asked Defendant to step out of the vehicle in order to conduct field sobriety tests. Defendant was able to exit the vehicle with no difficulty. Defendant told Corporal Cahall that he was coming from work, and had one beer prior to leaving. Corporal Cahall testified that Defendant's speech was mumbled. Corporal Cahall then escorted Defendant to a nearby parking lot[2] to conduct the field sobriety tests, outside the view of the MVR. Corporal Cahall testified that he decided to conduct the field sobriety tests in the parking lot because it was a flatter surface, and the roadway where Defendant was stopped was slanted with a downhill decline.

After escorting Defendant to the parking lot, Corporal Cahall administered the alphabet test. Corporal Cahall asked Defendant to recite the alphabet from the letter G to the letter T, which Defendant completed as directed. Corporal Cahall then administered a counting test, and asked Defendant to count backwards from 65 to 42. Defendant was unable to complete this test in that he missed the number 49 and stopped counting. After the counting test, Corporal Cahall administered the Horizontal Gaze Nystagmus ("HGN") test. Corporal Cahall testified that he detected six clues out of a possible six, which indicated impairment.

Next, Corporal Cahall administered the Walk-and-Turn test. Corporal Cahall testified that during the test Defendant: (1) lost his balance during the instructional phase; (2)

---

[2] The parking lot where Corporal Cahall escorted Defendant is adjacent to Delaware Park Drive, near the area where the traffic stop occurred. *See* Defendant's Exhibit 1, 2, and 4.

started the test too soon; (3) failed to walk heel-to-toe; (4) stepped off the line; and (5) took the incorrect amount of steps. Corporal Cahall testified that, thereafter, he administered the One-Leg Stand Test. Corporal Cahall testified that Defendant failed the test in that he: (1) swayed throughout the test; (2) used his arms for balance; (3) hopped during the test; and (4) put his foot on the ground before the test was complete. Thereafter, Corporal Cahall administered the Portable Breathalyzer Test ("PBT") at 1:34 a.m. Corporal Cahall testified that Defendant failed the PBT. Based upon the results of these tests and observations, Defendant was arrested for driving under the influence of alcohol.

During cross-examination, Defendant introduced several photographs of the adjoining area where Defendant's vehicle was pulled over by Corporal Cahall. The area depicted in the photographs is a hill going from the roadway to the flat surface where the field sobriety tests were administered. Corporal Cahall testified that the Defendant walked up the hill area without difficulty.

## DISCUSSION

### I. Reasonable and Articulable Suspicion

Defendant brings this motion to suppress challenging both the initial stop and subsequent arrest. With regard to the initial stop, Defendant contends Corporal Cahall did not have reasonable and articulable suspicion to believe Defendant had committed a crime. The Fourth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, protects people against unreasonable searches and seizures. The Delaware Supreme Court has held, "[w]hen law enforcement directs a driver to stop [their] car, the State has 'seized' the car and its occupants, and the protections of the

4

Fourth Amendment apply."[3] The State bears the burden of demonstrating that the stop was reasonable under the circumstances, and the officer conducting the stop had reasonable articulable suspicion that a crime had occurred, is occurring, or is about to occur.[4]

In the instant matter, Corporal Cahall testified that while he was stopped behind Defendant at a red light on Kirkwood Highway, he observed Defendant accelerate from the light at a high rate of speed once it turned green.[5] Corporal Cahall further testified that he paced Defendant's vehicle, and determined Defendant was exceeding the posted speed limit. In Delaware, a traffic violation such as speeding constitutes a basis for a stop.[6] Accordingly, I find that the State has met its burden to justify the initial stop, and Corporal Cahall had reasonable and articulable suspicion to believe Defendant had committed a traffic offense, i.e. speeding.

## II. Probable Cause

Defendant also brings this motion challenging his subsequent arrest. In support of this position, Defendant argues his behavior, including his driving, physical condition, and responsiveness to Corporal Cahall's instructions, failed to provide the probable cause that he was impaired. Defendant also contends the field sobriety tests should be suppressed as they were not administered in accordance with NHTSA standards. Likewise, Defendant argues the Court should suppress the PBT results because Corporal Cahall administered the test prior to the required fifteen minute observation period. Furthermore, Defendant maintains

---

[3] *West v. State*, 143 A.3d 712, 716 (Del. 2016).
[4] *State v. Mulholland*, 2013 WL 3131642, at *3 (Del. Com. Pl. June 14, 2013).
[5] According to the NHTSA manual, unnecessary acceleration is a "common and reliable" indicator of impairment. 2013 NHTSA Participant Manual, Session 5, Page 8.
[6] *See State v. Drummond*, 2000 WL 703250, at *2 (Del. Super. Apr. 25, 2000).

the fact that Corporal Cahall failed to include in his report any comment on Defendant's ability or inability to walk uphill when escorted to the adjacent parking lot is a strong indicator that he was not impaired. Therefore, Defendant argues that, based upon the totality of the circumstances, Corporal Cahall did not have probable cause to arrest him for driving under the influence, and moves to suppress all evidence obtained as a result of the unlawful arrest.

Delaware Courts have held that probable cause is an "elusive concept which . . . lies somewhere between suspicion and sufficient evidence to convict."[7] Probable cause exists when "an officer possesses information which would warrant a reasonable man in believing that such a crime has been committed."[8] In the context of DUI offenses, the arresting officer must possess facts which, when viewed in the totality of the circumstances, suggest a fair probability that the defendant was driving under the influence.[9] In essence, the State has to establish that the arresting officer "possess[ed] a quantum of trustworthy factual information sufficient to warrant a man of reasonable caution in believing a DUI offense ha[d] been committed."[10] The State does not have to establish that the defendant was "drunk" or "intoxicated."[11] Instead, a person will be deemed under the influence when he is "because of alcohol or drugs or a combination of both, less able than the person would

---

[7] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011).

[8] *Altizer v. State*, 2017 WL 111729, at * 4 (Del. Super. Jan. 11, 2017).

[9] *See Rybicki v. State*, 119 A.3d 663, 670 (Del. 2015).

[10] *Lefebvre*, 19 A.3d 287 at 293.

[11] *Stevens v. State*, 110 A.3d 1264, 1271 (Del. Super. 2015).

ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle."[12]

Generally, probable cause to arrest a driver for a DUI offense is measured by the arresting officer's observations of the defendant, including the defendant's performance on field sobriety tests.[13] In the instant matter, Defendant has raised several challenges to the field sobriety tests. First, Defendant argues the results of the HGN test should not be considered when assessing whether probable cause exist. In support of this position, Defendant contends the test was not administered according to NHTSA standards, because Corporal Cahall could not testify to the exact time parameters of the test.

"Prior to the admission of HGN evidence the State must provide [a] proper foundation . . . by presenting testimony from an expert with specialized knowledge and training in HGN testing and its underlying principles . . . ."[14] Moreover, for HGN evidence to be used for a probable cause determination, the HGN test must possess some indicia of reliability such that a reasonable person could conclude from the results that there is a fair probability the driver is "under the influence."[15]

In the instant matter, Corporal Cahall testified that he was certified by NHTSA to administer the HGN test, but could not testify to the exact time parameters of the test. Corporal Cahall did testify that he administered the test in accordance with his training; however, there are gaps in his testimony. Although Corporal Cahall was able to testify about the underlying principles of the HGN test, he failed to testify about the time limits NHTSA

---

[12] 21 *Del. C.* § 4177(11).
[13] *See Rybicki*, 119 A.3d at 671.
[14] *Miller v. State*, 4 A.3d 371, 374 (Del. 2010).
[15] *State v. Ruthardt*, 680 A.2d 349, 354 (Del. Super. 1996).

imposes for the test or that he complied with those time limits. This testimony is insufficient to establish the reliability of the HGN and as such the test is excluded.

Defendant also contends the Walk-and-Turn test was not administered according to NHTSA standards, because Corporal Cahall did not instruct Defendant to look at his feet while walking. Nevertheless, "no Court in this jurisdiction has concluded that a failure to strictly comply with NHTSA standards [will] invalidate[] the test."[16] Instead, the Court will consider the deficiencies, and give the test its proper weight in the probable cause analysis.[17] In this matter, I do not find Corporal Cahall's failure to instruct Defendant to look at his feet a significant deficiency that would warrant disregarding the test completely. Accordingly, I will afford proper weight to the Walk-and-Turn test in the probable cause analysis.

Lastly, Defendant contends the Court should disregard the PBT results because the State failed to lay a proper foundation for its admissibility. Specifically, Defendant contends Corporal Cahall administered the test prior to the required fifteen minute observation period. In Delaware, "the standard procedure for administering the PBT requires a fifteen minute observation period before the test is performed."[18] However, while, "any questions as to the PBT's proper foundation may only go to the weight placed on the test result, rather

---

[16] *State v. Dale*, 2016 WL 691445, at *3 (Del. Super. Feb. 11, 2016).
[17] *State v. Pasawicz*, 2012 WL 1392564, at *5 (Del. Com. Pl. Mar. 16, 2012).
[18] *Dale*, 2016 WL 691445, at *3.

than its admissibility,"[19] this Court has refused to admit a PBT when the officer failed to establish the requisite observation period.[20]

In the case *sub judice*, the MVR shows that Corporal Cahall first stopped Defendant's vehicle at 1:21 a.m. The MVR later shows Corporal Cahall administering the PBT at approximately 1:34 a.m. At most, Corporal Cahall would have observed Defendant for thirteen minutes prior to administering the PBT. As a result, Corporal Cahall deviated from the standard observation period for administering a PBT. Therefore, the results of the PBT are excluded.

In considering the totality of the evidence in this matter—even excluding the results of the HGN test and the PBT—I find that the State has met its burden of establishing that Corporal Cahall had probable cause to believe Defendant was driving under the influence. The case of *Bease v. State*[21] is illustrative in determining probable cause. In *Bease*, the Delaware Supreme Court held that probable cause exists when the evidence establishes that: (1) the defendant spoke in a rapid manner; (2) smelled of alcohol; (3) admitted to consuming alcohol; (4) had bloodshot and glassy eyes; and (5) had committed a traffic violation.[22]

The instant matter before the Court is similar to the factors in *Bease*, and includes another relevant factor—two failed field sobriety tests. Based upon the foregoing, I find the following factors relevant under the "totality of the circumstances" analysis: (1) Defendant committed a traffic violation, i.e. speeding; (2) Defendant accelerated at a high rate of speed

---

[19] *State v. Beheler*, 2010 WL 2195978, at *4 (Del. Com. Pl. Apr. 22, 2010) (quoting *State v. Blake*, 2009 WL 3043964, at *4 (Del. Com. Pl. Sept. 14, 2009)).

[20] *See State v. Bell*, 2015 WL 1880591, fn. 6 (Del. Com. Pl. Apr. 23, 2015).

[21] 884 A.2d 495 (Del. 2005).

[22] *See id.* at 499–500.

after the light turned green; (3) Corporal Cahall detected a moderate odor of alcohol; (4) Defendant's eyes were extremely bloodshot and glassy; (5) Defendant admitted to drinking prior to leaving work; (6) Defendant's speech was mumbled; and (7) Defendant's poor performance on the Walk-and-Turn and One-Legged Stand tests.

Accordingly, based upon the totality of the evidence, which includes consideration of the photographs and Defendant's ability to walk uphill, I find that the State has established that Corporal Cahall had probable cause to take the Defendant into custody. Consequently, Defendant's Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge