# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        )
                          )
                          )
        v.                )
                          )
RONY L. ORTEZ-OLIVIA,     )        ID No. 1802000055
                          )
    Defendant.            )
                          )
                          )

Date Submitted: October 5, 2018
Date Decided: November 8, 2018

On Defendant Rony Ortez-Olivia's Motion to Suppress. **DENIED.**

## **ORDER**

Colleen E. Durkin, Esquire, Deputy Attorney General, 820 N. French Street, 7th Floor Wilmington, Delaware 19801. Attorney for the State.

James M. Stiller, Jr, Esquire, Schwartz & Schwartz, 1140 South State Street, Dover, Delaware 19901. Attorney for Defendant.

**Scott, J.**

## Findings of Fact

In the early morning hours of February 1, 2018 Trooper Gumbs received a call to respond to a suspicious vehicle. Trooper Gumbs was at the Delaware State Police Troop 9 barracks in Odessa at the time, and the location of the call was approximately one quarter of a mile away. Trooper Gumbs arrived to the scene of the suspicious vehicle a short time later. Trooper Gumbs upon arrival discovered a white utility or work van stationary in the left hand turning lane of the southbound travel lanes of Route 13. The van was running and pointed in a northbound direction.

In the location where the vehicle was found, the north and southbound lanes of the highway do not run directly parallel to one another, and are separated by some distance. The van was discovered in the left hand turn lane which would customarily be used by southbound traffic to access the Sunoco gas station that exists between the north and southbound lanes of the highway. In addition to Trooper Gumbs at least 4 other officers responded to the scene.

Upon inspection Trooper Gumbs noticed the vehicle was occupied. For his safety Trooper Gumbs approached the vehicle from the passenger side to minimize danger from oncoming traffic, and discovered Defendant asleep in the Driver's seat of the van. Trooper Gumbs attempted to wake Defendant both verbally and by knocking on the window. After some time, Defendant woke up, appearing to be shocked and confused, and reached for the gear selector of the van. Trooper Gumbs opened the passenger door of the vehicle and removed Defendant's hand from the

2

selector. Trooper Gumbs noticed an odor of alcohol inside the vehicle while preventing Defendant from attempting to shift the vehicle. Another trooper on scene reached in the vehicle from the driver's side and shut the vehicle off with the key. Trooper Gumbs stated Defendant was asked to exit the vehicle and required assistance from the other trooper on scene to do so.

After moving away from the van Trooper Gumbs began a dialogue with Defendant suspecting he may have been under the influence of alcohol. Trooper Gumbs inquired as to Defendant's name, where he was traveling to and from, and if he had consumed any alcohol. Trooper Gumbs noted Defendant had an odor of alcohol about his person, and had bloodshot and glassy eyes.

It became apparent that Defendant spoke English as a second language, with an accent. Trooper Gumbs asked Defendant if he knew his ABCs and if he could recite them starting with the letter E and continue through P. Defendant stated that he knew his alphabet, but could not perform the test as requested by Trooper Gumbs. Defendant stated he could recite his alphabet in Spanish, enunciating the letters A, B, C as Ah, Bay, Say.

Trooper Gumbs then inquired if Defendant knew his numbers. Defendant responded affirmatively. Trooper Gumbs requested Defendant to count backwards from 68 to 53. Defendant began counting and stopped at 60 stating something about knowing his measuring tape. After a brief interaction with Gumbs, Defendant continued to count backwards to 53. Trooper Gumbs stated he uses this test as an

3

initial indicator to determine if he should proceed with further field sobriety tests. Gumbs stated he looks to see if individuals transpose numbers, pause or otherwise fail to complete the task.

Trooper Gumbs then advised Defendant he was going to administer 3 tests; the horizontal gaze nystagmus (HGN), the one leg stand (OLS), and the walk and turn (WAT) tests. Each of the tests was described before administering the tests.

Trooper Gumbs described the HGN test as a vision test and inquired as to whether Defendant had any issues with his vision or used glasses or contacts. Defendant stated he did use corrective lenses, but was not wearing them at the time. Trooper Gumbs described the test correctly, and Defendant performed the test according to the instructions. Trooper Gumbs proceeded to administer the HGN test and noted 4 clues to indicate intoxication. Trooper Gumbs administered the test in 72 seconds. The National Highway Traffic Safety Administration (NHTSA) guidelines do not specify how long the entirety of the test should take, but specifies time of completion for individual components. Trooper Gumbs administered the HGN test more rapidly than specified in the guidelines.

Trooper Gumbs then administered the OLS test. In giving instructions Gumbs asked Defendant to raise whichever leg he chose and count "One-one-thousand, two-one-thousand, three-one-thousand…" This method of counting was repeated twice, and Gumbs asked Defendant to count in this form "up to thirty." The instructions in the NHTSA guidelines suggest having an individual count 1001, 1002, 1003, …, up

4

to 1030. Defendant counted One-thousand, two-thousand, three-thousand, at reaching ten-thousand Defendant kept his foot up and expressed confusion with how to continue counting. After lowering his foot to the ground Defendant clarified, asking "Can I just go, like, one, two, three?" to which he was told no. Defendant raised his leg again and began counting from one-thousand as before. Trooper Gumbs noted 2 clues during this test to indicate intoxication. The two clues found during this test were for when Defendant placed his foot on the ground, and for keeping his arms slightly raised from his side to keep balance.

Trooper Gumbs then administered the WAT test. In providing instructions for the test Trooper Gumbs instructed "you're going to start with your feet shoulder width apart, hands by your side." He further instructed "You're going to take nine steps, heel-to-toe like so" then proceeded to demonstrate taking and counting out loud ten steps. Although Trooper Gumbs demonstrated the WAT test incorrectly, Defendant performed the test correctly, and exhibited signs of intoxication. Defendant performed the test as instructed, counting and taking nine steps. Trooper Gumbs indicated 2 clues observed for Defendant's failure to touch heel-to-toe once on the walk out and once on the walk back. These were the only two clues noted for this test.

Trooper Gumbs then administered a portable breathalyzer test (PBT). Prior to administering the PBT Trooper Gumbs had been in direct contact with Defendant for 17 minutes. Trooper Gumbs returned to his vehicle to retrieve the PBT and

5

returned to Defendant in less than one minute. During this time another Trooper was in direct contact with Defendant. The results of the PBT returned a BAC of 0.151%, indicating Defendant was over the legal limit for driving under the influence. The PBT used for the test was calibrated on March 28th and was functioning properly.

Trooper Gumbs, having established probable cause arrested Defendant and transported him to Troop 9 headquarters where Defendant was subjected to the Intoxilyzer 5000 breath test. The results of that test showed a BAC of 0.145%.

## Discussion

Defendant asserts Trooper Gumbs administered the standardized field sobriety tests incorrectly and as a result could not establish probable cause for the arrest. Defendant moves to suppress all evidence of wrongdoing, or in the alternative the results of the field sobriety tests and Intoxilyzer 5000 test.

Persons operating a vehicle in the State of Delaware are statutorily deemed to have given consent to testing for the purpose of determining the presence of drugs or alcohol.[1] This testing constitutes a search of the person and as such the officer seeking to submit the individual for testing must have probable cause to believe the person was operating a vehicle in violation of the State's impaired driving statutes.[2]

---

[1] 21 *Del. C.* § 2740 (a).
[2] *Id.*

6

"Probable cause to arrest for a DUI offense exists when an officer possesses information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed."[3] Probable cause is established when officers "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime."[4]

Probable cause sufficient to arrest an individual for a DUI offense is based upon the arresting officer's observations including, but not limited to, field sobriety tests.[5] In reviewing the totality of the circumstances surrounding a DUI arrest, an officer need not rule out hypothetically innocent alternative explanations for a driver's conduct.[6]

The standardized field sobriety tests outlined by the NHTSA are highly accurate and reliable tests for detecting blood alcohol concentrations at or above 0.10%, above the legal limit in this State of 0.08%.[7] In order to achieve reliability however, the tests must be administered in a standardized manner.[8] Failure to do so compromises the results.[9] However, other field sobriety tests can be effectively used

---

[3] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011) (internal quotations omitted).
[4] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993)
[5] *Rybicki v. State*, 119 A.3d 663, 671 (Del. 2015); *citing Lefebvre*, at 293.
[6] *Lefebvre*, at 293.
[7] National Highway Transportation Safety Administration, DWI Detection and Standardized Field Sobriety Testing, Instructor's Manual. Sess. 8 pg. 7. (hereinafter cited as "NHTSA SFST Inst. Man. at Sess. ___.").
[8] *Id*.
[9] *See; Lefebvre,* at 291.

to assess impairment.[10]  Similarly, an officer's inadequate instructions prior to administering a test will not invalidate the results if the test is performed correctly by the individual.[11]

The Supreme Court has stated that in DUI cases no precise formula exists as to what constitutes probable cause, but that factual context matters. In *Esham v. Voshell*, the Court determined that a traffic violation in concert with an odor of alcohol, by themselves, does not constitute probable Cause.[12]  In *Bease v. State*, the Court determined a traffic violation, odor of alcohol, rapid speech, admission to drinking earlier in the day, bloodshot and glassy eyes, and a failed alphabet test allowed a determination of probable cause sufficient for an arrest for DUI.[13]

In *Perrera v. State*, the Court determined other facts sufficient for probable cause existed even when Defendant passed two of the field sobriety tests administered.[14]  In *Perrera* the other factors included a traffic violation, bloodshot and glassy eyes, an odor of alcohol, an admission to drinking earlier in the day, and beer cans on the floor of the vehicle.[15]  *Perrera* failed the alphabet and counting tests as administered, as well as the portable breathalyzer test.[16]

---

[10] NHTSA SFST Inst. Man. at Sess. 8 pg. 7.
[11] *State v. Groves*, 2016 WL 675997, at *1 (Del. Super. 2016).
[12] *Esham v. Voshell*, 1987 WL 8277 (Del. Super. 1987).
[13] *Bease v. State*, 884 A.2d 495 (Del. Supr. 2005).
[14] *Perrera v. State*, 19 A.3d 287 (Del. Supr. 2011).
[15] *Perrera*, at 908.
[16] *Id.*

Even excluding the results of the field sobriety tests as administered, the totality of the circumstances shows there was probable cause for Defendant's arrest.

Defendant was discovered asleep behind the wheel of his vehicle. The vehicle was parked with the engine running, facing oncoming traffic in a turning lane. Upon waking up Defendant seemed confused. Defendant's vehicle and person smelled of alcohol, he had bloodshot and glassy eyes, and he required assistance exiting the vehicle. In preliminary questions Defendant had difficulty explaining the origin and destination of his travel, struggled to complete a counting test, and admitted to having consumed alcohol.

Additionally, there is no evidence the PBT test was administered in a way so as to invalidate its results. At the time Trooper Gumbs administered the PBT Defendant had been under direct observation of either Trooper Gumbs or another Trooper on scene. The PBT device had recently been calibrated, and returned a result indicating Defendant was intoxicated.

## Conclusion

When an officer is conducting a DUI investigation a Defendant's impairment is established through what the officer sees, hears, and smells.[17] The State has presented facts suggesting, in the totality of the circumstances, that a fair probability

---

[17] NHTSA SFST Inst. Man. at Sess. 7 Pg. 27.

existed that Defendant was operating his vehicle while under the influence of alcohol.

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

_____

**Judge Calvin L. Scott, Jr.**