# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,     )
)
)
v.          )     Case No. 1905011621
)
CAYLA M. STOUT,     )
)
)
Defendant.     )

Submitted:  January 23, 2020
Decided:    March 19, 2020

Isaac Rank, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
Attorney for the State of Delaware

Joe Hurley, Esquire
1215 King Street
Wilmington, DE 19801
Attorney for Defendant

## MEMORANDUM OPINION ON
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Manning, J.

## FACTS AND PROCEDURAL HISTORY

On May 19, 2019, Cayla Stout (hereinafter "Defendant") was arrested by Trooper Santangelo (hereinafter "Santangelo") for the offense of Driving a Vehicle Under the Influence of Alcohol ("DUI") in violation of 21 *Del. C.* § 4177. The facts that gave rise to these proceedings indicate that Santangelo responded to a one-vehicle collision that transpired on Route 1 northbound near the Christiana Mall. When Santangelo arrived on the scene, Emergency Medical Services ("EMS") advised him that the operator of the vehicle appeared intoxicated. EMS further informed Santangelo that the operator of the vehicle would not listen to their repeated instructions. The operator of the vehicle was transported to Christiana Hospital for injuries sustained in the collision.

Upon Santangelo's arrival at the Christiana Hospital, he met the operator of the vehicle who identified as the Defendant. Defendant admitted to Santangelo that she was at Grain Craft Bar and consumed one alcoholic beverage, specifically a "Titos Vodka and Sprite," approximately three hours prior. The Defendant divulged that she did not consume any other alcoholic beverages. Santangelo detected a strong odor of alcohol coming from Defendant's person and further, observed that Defendant's eyes were glassy, watery and discolored. A warrant was subsequently obtained for a search of Defendant's blood.

2

On December 4, 2019, Defendant filed a Motion to Suppress ("Motion"). On January 7, 2020, the Court held a hearing on the Motion. Upon conclusion of the hearing, the Court took the Motion under advisement. At the request of the Court, the State and Defendant both filed supplemental briefs following the hearing. On January 23, 2020, the State submitted its Response to Defendant's Motion to Suppress and Defendant submitted her Memorandum of Law.

**PARTIES' CONTENTIONS**

Defendant argues the arrest was not supported by probable cause and was unlawful. In support of this argument, Defendant avers the search warrant affidavit gave no indication of Santangelo's training and/or experience in impaired driving investigation and/or National Highway Traffic Safety Standards. Further, Defendant contends that Santangelo offered hearsay statements by EMS in the search warrant affidavit. In addition, Defendant states the strength or odor spirits associated with alcohol has no correlation to the amount of alcohol consumed. Moreover, Defendant advances that "discolored" eyes has no connection to being under the influence of alcohol. Lastly, Defendant notes the absence of mental impairment, behavior oddity and speech irregularity in Santangelo's observations and indications.

The State argues the arrest was supported by probable cause and was in fact lawful. The State asserts that the search warrant affidavit, indicating Defendant's involvement in a one vehicle collision, Defendant's bloodshot and glassy eyes, the

3

smell of alcohol on Defendant's person, Defendant's admission to being at a bar earlier in the evening and drinking alcohol three hours prior, Defendant's dazed and confused state, and Defendant's inability to respond to EMS's instruction, supports a finding of probable cause. Furthermore, the State alleges that the EMS hearsay statements formed a basis of probable cause, because it was corroborated by multiple factors within Santangelo's personal knowledge.

## LEGAL STANDARD

On a motion to suppress, the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause.[1] To establish probable cause for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[2] This totality consideration is based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[3] "The Court must examine the totality of circumstances surrounding the situation as viewed through

---

[1] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

[2] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[3] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).

4

the 'eyes of a reasonable trained police officer in similar circumstances, combining the objective facts with the officer's subjective interpretation of those facts.'"[4]

## DISCUSSION

### A. Probable Cause to Arrest

In *Lefebvre*, the Delaware Supreme Court held probable cause to arrest exists where an officer can "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[5] In *Bease v. State*, the Delaware Supreme Court found probable cause to arrest existed where a motorist committed a traffic violation, spoke rapidly, smelled of alcohol, admitted to consumption of alcoholic beverages, and had blood shoot glassy eyes.[6] In *State v. Hudgins*, the Delaware Superior Court found bloodshot eyes, slurred speech and the odor of alcohol emanating from ones breath to be "ample evidence to support a finding that there was probable cause to arrest for a DUI offense."[7] Further, in *Garner v. State*, the Delaware Supreme Court found that "[p]robable cause can be established from either direct observation or

---

[4] *State v. Kane*, No. 1210019022, 2014 WL 12684290, at *4 (Del. Com. Pl. Feb. 12, 2014); *See Woody v. State*, 765 A.2d 1257, 1262-64 (Del. 2000).

[5] *Lefebvre* at *292.

[6] 884 A.2d 495, 498 (Del. 2005).

[7] 2015 WL 511422, at *4 (Del. Super. Jan. 16, 2015).

hearsay."[8] "The latter, consisting generally of incriminatory reports to the police by informants or witnesses, is acceptable, provided that it is sufficiently corroborated by other facts within the officer's knowledge."[9]

Here, the facts and circumstances were sufficient to put Santangelo on notice that Defendant was impaired. First, the Defendant was involved in a one-vehicle collision. Second, EMS informed Santangelo that the Defendant was dazed and confused, and unable to respond to instructions. Further, Defendant informed Santangelo that she was at a bar earlier in the evening and drank alcohol prior to the collision. Moreover, Defendant's eyes were glassy, watery, and an odor of alcohol emanated from her person.

Defendant's admissions to Santangelo, coupled with his observations of Defendant's physical state of being, corroborated the EMS statements. Further, Santangelo's affidavit advances a sufficient facts within his knowledge that corroborated his belief Defendant was driving in an impaired state. Thus, the EMS statements to Santangelo are reliable. Under a totality of circumstances analysis, all of the aforementioned reasons provide reasonable grounds to believe the Defendant was driving under the influence of alcohol.

---

[8] 314 A.2d 908, 911 (Del. 1973).

[9] *Id.*

6

## B. Probable Cause to Support Search Warrant

Before a magistrate issues a search warrant, the magistrate "must find that probable cause exists that evidence of a crime will be found in the place to be searched."[10] "An affidavit of probable cause in support of a search warrant must contain sufficient facts to establish probable cause within the 'four corners' or on the face of the affidavits."[11] "Probable cause exists in the affidavit where there is 'a logical nexus between the items sought and the place to be searched.' "[12] "Such a nexus can be 'inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inference as to where a criminal would hide evidence of a crime.' "[13]

In *State v. Holden*, the Delaware Supreme Court found "[a] court reviewing the magistrate's determination has the duty of ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.' "[14] "A magistrate's determination of probable cause 'should be paid great deference by reviewing

---

[10] *Rybicki v. State*, 119 A.3d 663, 668 (Del. 2015).

[11] *State v. Nieves-Torres*, 2001 WL 2083958, at *6 (Del. Super. Apr. 25, 2011) (quoting *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).

[12] *Id.*

[13] Id. (quoting *State v. Cannon*, 2007 WL 1849022 at *4 (Del. Super. Oct. 18, 2000)).

[14] 60 A.3d 1110, 1114 (Del. 2013) (quoting *Illinois v. Gates*, 462 U.S., 238-39, 103 S. Ct. 2317, 76 L.Ed.2d 527 (U.S. 1983)).

courts' and should not, therefore, 'take the form of a de novo review.' "[15] " 'Notwithstanding this deference,' the reviewing court must determine whether the magistrate's decision reflect a proper analysis of the totality of the circumstances."[16]

The search warrant affidavit is signed "Tpr. Santangelo #1826." This information allowed the issuing magistrate to reasonably infer that Santangelo was a trained officer with the Delaware State Police and had the requisite training and knowledge to conduct a DUI investigation. Thus, Defendant's reasoning to the contrary lacks merit.

In addition, the affidavit gave a description of Santangelo's response to the collision and his encounter with EMS. Further, the affidavit specified that Defendant had consumed alcohol prior to the collision and that Santangelo "smelled a strong odor of [a]lcohol coming from her person." Moreover, the affidavit asserted that Defendant's eyes were "glassy, watery and discolored." I find the magistrates reliance on the information provided in the affidavit reasonable. Albeit the warrant in question is certainly not a paradigmatic draft and certainly could have set forth more particulars, the four corners of the affidavit contained enough information to establish probable cause to believe that Defendant's blood may have contained evidence that she was driving under the influence.

---

[15] *Id.*

[16] *Id.* (quoting *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008)).

8

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

The matter shall be scheduled for trial.

**IT IS SO ORDERED.**

Bradley V. Manning,
Judge