# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. )
)
)
) **Cr.A. No.: 1611018155**
DARTANYA M. MURRAY, )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS

Nathan D. Barillo, Esquire
Office of the Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

A. Dale Bowers, Esquire
Caren L. Sydnor, Esquire
203 North Maryland Avenue
Wilmington, DE 19804
*Attorneys for the Defendant*

WELCH, J.

# I. PROCEDURAL POSTURE

On November 27, 2016, Defendant Dartanya Murray ("Defendant") was arrested and charged with Driving Under the Influence ("DUI"), in violation of 21 *Del. C.* § 4177; Leaving the Scene of a Property Collision Accident, in violation of 21 *Del. C.* § 4201(a); Driving While Suspended or Revoked, in violation of 21 *Del. C.* §2756(a); Failure to Provide Information at Collision Scene Resulting in Property Damage, in violation of 21 *Del. C.* § 4201(b); Out-of-State Vehicle – Failure to Have Minimum Insurance, in violation of 21 *Del. C.* § 2118(b); Driving in Improper Lane and Direction, in violation of 21 *Del. C.* § 4126(a)(3); Failure to Have Two Lighted Lamps Displayed, in violation of 21 *Del. C.* § 4352(a); and Failure to Report a Collision Involving Alcohol or Drugs, in violation of 21 *Del. C.* § 4203(a)(3). On December 28, 2016, Defendant entered a plea of not guilty.

On March 24, 2017, Defendant moved to suppress the results of her blood alcohol reading and statements she made to police officers while in the hospital. The Defendant raised three grounds for suppression: 1) the officer failed to establish probable cause within the four-corners of the search warrant affidavit; 2) there are insufficient facts to establish probable cause to support the issuance of the search warrant when certain lines are stricken from the affidavit as required under *Franks v. Delaware*;[1] and 3) her statements to police officers while she was in the hospital were not knowingly and intelligently made.[2]

On July 18, 2017, the Court heard the Motion to Suppress ("Motion"). Following the hearing, the Court reserved its decision on the Motion and ordered supplemental briefing. On August 8, 2017, the State filed its *Response to Defendant's Motion to Suppress* ("State's

---

[1] *See generally Franks v. Delaware*, 438 U.S. 154 (1978).
[2] Defendant's Motion to Suppress (hereinafter "Defendant's Motion") at 4, 7, 10.

Response").[3] And, on September 27, 2017, Defendant filed her *Reply Brief on Defendant's Motion to Suppress* ("Defendant's Reply").[4] This is the Court's Final Decision and Order on the Defendant's Motion to Suppress.

## II. FACTS

On November 27, 2016, at approximately 1:31 a.m., Trooper First Class Daniel B. Galiani ("Trooper Galiani"),[5] Trooper First Class Chase A. Lawson ("Trooper Lawson"),[6] and Trooper First Class Earl Marchione ("Trooper Marchione"),[7] of the Delaware State Police Troop One, responded to a call regarding a motor vehicle accident on I-495 southbound, near the Edgemoor Road exit.

### A. Testimony of Trooper First Class Galiani

When Trooper Galiani arrived on the scene at approximately 1:40 a.m., he saw three vehicles that had sustained extensive front-end damage. Trooper Galiani testified that one of the vehicles was stationary, facing northbound in an I-495 southbound lane.[8] Trooper Galiani testified that this vehicle ("the stationary vehicle") was owned by Defendant and he believed it had been "hit multiple times."[9] When the State asked Trooper Galiani if he knew "how that vehicle ended

---

[3] State's Response to Defendant's Motion to Suppress (hereinafter "State's Response").

[4] Defendant's Reply Brief on Defendant's Motion to Suppress (hereinafter "Defendant's Reply").

[5] Trooper Galiani has been employed as a police officer for over two-and-a-half years, working at Troop One for over one-year. Trooper Galiani was certified in Driving under the influence ("DUI") enforcement during police academy, which began in December 2014.

[6] Trooper Lawson has been employed as a police officer for approximately two-and-a-half years at Troop One. He is certified by the National Highway Traffic Safety Administration in DUI enforcement.

[7] Trooper Marchione has been employed as a police officer for approximately two-and-a-half years with the Delaware State Police. His testimony was brief. He testified that he did not interview Defendant, Mr. Triplett, or medical personnel, but he testified that he observed injuries on Defendant—specifically a laceration to her left shoulder—that in his general training and experience as a police officer are consistent with a "high velocity" seatbelt injury that could only occur to the driver of a vehicle. Defendant objected to his testimony as regarding facts not provided to defense counsel. The State noted that Trooper Marchione was not testifying as an expert.

[8] Trooper Galiani testified on cross-examination that this vehicle was not running when he arrived at the accident scene.

[9] On cross-examination, Trooper Galiani could not recall how he determined that Defendant owned the vehicle, beyond the annotation in his report. Trooper Galiani agreed that the stationary vehicle was registered in Pennsylvania and Defendant is a resident of Delaware, admitting that this appeared inconsistent.

3

up facing the wrong way," he testified that he did not know. He further testified that Defendant was not at the scene when he arrived.

Trooper Galiani spoke with the operators of the vehicles who were present at the accident scene. One operator stated that while he was driving he came upon a stationary vehicle without lights on and, in attempting to avoid the stationary vehicle, he hit his brakes, swerving into a vehicle in another lane which then forced his vehicle to collide with the stationary vehicle. After drafting an accident exchange report, Trooper Galiani investigated the stationary vehicle and found blood on the seat, dashboard, and windshield of the passenger side of the vehicle. He also observed a large crack in the windshield on the passenger side of the vehicle; he did not observe a crack in the driver side window. Trooper Galiani "could not recall" whether he found a registration card or insurance in the stationary vehicle.[10]

While at the scene of the accident, the Troopers were advised by dispatch that two individuals were dropped off earlier at Wilmington Hospital Emergency Room for treatment of "serious injuries" sustained from a motor vehicle accident. These individuals were identified as Defendant and Edmond Triplett ("Mr. Triplett"). Trooper Galiani testified that he believed an innocent bystander transported Defendant and Mr. Triplett to the emergency room, but he was unsure exactly how they had arrived at the hospital. He further testified that neither Defendant nor Mr. Triplett reported the accident.

Troopers Lawson and Marchioni responded to the hospital, while Trooper Galiani remained at the scene. Trooper Galiani testified that Trooper Lawson informed him that when Trooper Lawson arrived at the hospital and spoke with Mr. Triplett, Mr. Triplett's head was bleeding, and he told Trooper Lawson that Defendant had been driving. Trooper Lawson then

---

[10] Trooper Galiani also admitted on cross-examination that he was not "one-hundred percent sure" he had seen the stationary vehicle's registration.

4

interviewed Defendant, who was suffering from an ankle injury and chest pain, who informed him that she was traveling home from her sister's birthday party in Philadelphia where she had been drinking. Trooper Lawson further informed Trooper Galiani that Defendant admitted to driving the stationary vehicle, Trooper Lawson could smell the "faint amount of alcohol on her breath," and described her eyes as glassy and bloodshot.

After speaking with Trooper Lawson, Trooper Galiani traveled to Troop One to prepare a Blood Search Warrant Affidavit (the "affidavit"); Trooper Galiani testified that he included all of Trooper Lawson's statements to him in the affidavit, including the odor of alcohol.[11] A search warrant was signed by a magistrate of the Justice of the Peace Court and the Troop One phlebotomist traveled with Trooper Galiani to the hospital to draw Defendant's blood. At approximately 3:50 a.m., Trooper Galiani testified that he smelled a "very faint smell of alcohol" in Defendant's hospital room. And, at approximately 3:55 a.m., Defendant's blood was drawn.[12] Defendant's blood draw registered a Blood Alcohol Content of 0.05. Following the test, Defendant was arrested and charged.

### B. Testimony of Trooper First Class Lawson

Trooper Lawson testified that he was dispatched to a possible motor vehicle collision. Upon arriving at the scene, he observed several vehicles and individuals on I-495 southbound. He testified that he observed a large amount of blood in the stationary vehicle, which he described as resting in the far-left-hand I-495 southbound lane. While investigating the collision, Trooper Lawson was informed by Wilmington Hospital that two individuals had arrived with severe

---

[11] Trooper Galiani admitted on cross-examination that he failed to include Trooper Lawson's odor of alcohol statement in the affidavit. The affidavit's exact language is reproduced in the *Discussion* section below.

[12] Trooper Galiani testified that he was prevented from interviewing her because she was incoherent and he had difficulty understanding her. He also testified that Defendant said, "I didn't drive; I didn't drive" during the blood withdraw. He commented at the hearing that he was "pretty sure" medical personnel had given Defendant medication for pain.

injuries which could be consistent with a motor vehicle collision. When Trooper Lawson arrived, hospital personnel informed him that the two individuals had admitted to being involved in a motor vehicle accident on I-495. Trooper Lawson also testified that the innocent bystander who transported them to the hospital confirmed that he had picked up two individuals who had been involved in a motor vehicle collision on I-495, as one of the individuals had severe head injuries. Trooper Lawson testified that the individuals transported to Wilmington Hospital were Mr. Triplett and Defendant.

At approximately 2:15 a.m., Trooper Lawson testified that he interviewed Defendant and Mr. Triplett.[13] Trooper Lawson testified that Mr. Triplett suffered severe injuries to his head— multiple lacerations and severe bleeding. He stated that Mr. Triplett informed him that Mr. Triplett was the front seat passenger of a vehicle involved in a motor vehicle collision.[14] Trooper Lawson testified that Mr. Triplett never told him who was driving the vehicle.

During Trooper Lawson's interview of Defendant, Defendant informed him that she and Mr. Triplett were traveling home from her sister's birthday party in the Philadelphia area, where Defendant had been drinking. Trooper Lawson described Defendant as uncooperative, noticed that Defendant's eyes were "glassy and bloodshot," and stated that he could smell alcohol in Defendant's hospital room approximately two to three feet away from her. Trooper Lawson testified that Defendant did not inform him who was driving the stationary vehicle. He also testified that the medical personnel informed him that Defendant was complaining of ankle pain and had injuries to one of her shoulders consistent with wearing a seatbelt. Trooper Lawson did not perform any field sobriety tests on Defendant due to her injuries.

---

[13] Trooper Lawson testified that he could not remember who he interviewed first, but that he interviewed them separately within approximately fifteen minutes of each other.
[14] Trooper Lawson believed Mr. Triplett's injuries were consistent with the cracked glass in the stationary vehicle.

6

## III.  DISCUSSION

In Defendant's Motion, she moves to suppress the results of the blood test on two grounds: (1) that Trooper Galiani's affidavit did not establish probable cause within its four-corners; and (2) that Trooper Galiani's affidavit contained statements that recklessly disregarded the truth.[15] Additionally, in Defendant's Motion, she moved to suppress some of her statements to Trooper Lawson at Wilmington Hospital because no *Miranda* warnings were given; however, in Defendant's Reply brief, she deems her *Miranda* argument moot.[16]  Based on the following analysis, the Court finds that the evidentiary results obtained from the blood draw should be excluded.[17]

---

[15] Defendant's Motion focuses only on suppression related to her DUI charge. *See State v. Shutak*, 2017 WL 4339690, at *3 n.13 (Del. Com. Pl. Sept. 29, 2017) ("Arguments are deemed waived when not raised in the motion to suppress."). Yet, at the suppression hearing, Defense counsel stated that because whether Defendant was driving was in contention, Defendant was arguing the State also did not have probable cause to charge Defendant with the remaining charges. The State stated it believed the hearing would focus on the DUI charge and that the testimony would not support a probable cause finding for the other charges; however, it stated that it could elicit testimony at the hearing that was sufficient to support probable cause. The Court finds that the State has provided sufficient information to support charging Defendant with: Leaving the Scene of a Property Collision Accident, in violation of 21 *Del. C.* § 4201(a); Failure to Provide Information at Collision Scene Resulting in Property Damage, in violation of 21 *Del. C.* § 4201(b); Failure to Report a Collision Involving Alcohol or Drugs, in violation of 21 *Del. C.* § 4203(a)(3); and Failure to Have Two Lighted Lamps Displayed, in violation of 21 *Del. C.* § 4352(a). However, the State has failed to provide sufficient evidence to support charging Defendant with: Out-of-State Vehicle – Failure to Have Minimum Insurance, in violation of 21 *Del. C.* § 2118(b); Driving in Improper Lane and Direction, in violation of 21 *Del. C.* § 4126(a)(3); and Driving While Suspended or Revoked, in violation of 21 *Del. C.* §2756(a). Based on the testimony provided at the hearing, Trooper Galiani could "not recall" whether he found insurance in the stationary vehicle, there was no testimony that the stationary vehicle was driven improperly—only that it became stationary in the wrong direction, and no testimony that Defendant's license was suspended or revoked.

[16] Defendant's Reply at 11. Defendant avers that her argument is moot because Trooper Lawson testified at the suppression hearing that neither Defendant nor Mr. Triplett stated that Defendant was driving. Moreover, Defendant asserts that an affidavit signed by Mr. Triplett on December 28, 2016, in which Mr. Triplett asserts he was the driver of the vehicle on November 27, 2016, mitigates any residual *Miranda* concerns. Defendant's Reply at 11 & Exhibit 5. Because a magistrate's determination is not dependent upon facts "developed at some later time," the Court will not address this facet of Defendant's argument. *Jackson v. State*, 643 A.2d 1360, 1367 (Del. 1994). To the extent Defendant did not waive her *Miranda* argument by stating that the argument was "moot," the Court finds that, under the facts of this case, any "physical incapacity" of Defendant in the hospital does not trigger *Miranda*. *State v. Maulk*, 2014 WL 4942177, at *4 (Del. Super. Sept. 29, 2014).

[17] Because Defendant seeks to show that the affidavit lacks probable cause under its reverse-*Franks* and *Franks'* arguments, the Court's decision in this case renders a *Franks'* analysis moot. *See Franks v. Delaware*, 438 U.S. 154 (1978). The Court does observe that the State is correct—a separate *Franks'* hearing is the proper vehicle. *See In re O'Connor*, 2010 WL 5551922, at *1 (Del. Super. Mar. 16, 2010) ("I decline to go past the "four corners" of the affidavit for purposes of a discovery hearing because *Franks* and *Backus* require the Defendant to make a preliminary showing by an offer of proof that the affidavit contains a deliberate falsehood or a reckless disregard for the truth."); *State v. Hackendorn*, 2016 WL 266360, at *4 (Del. Super. Jan. 13, 2016) ("The State is correct in that a *Franks*['] or

7

Trooper Galiani's affidavit fails to establish probable cause. The "intrusive" nature of a blood draw requires a search warrant in order to extract the blood, unless a recognized exception to the warrant requirement applies.[18] Both the United States Constitution and Delaware Constitution requires a showing of probable cause for the issuance of a search warrant.[19] Further, the General Assembly has codified "statutory requirements" in support of the Delaware Constitution's probable cause provision.[20] 11 *Del. C.* § 2306 states:

> The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.[21]

Likewise, 11 *Del. C.* § 2307 states:

> If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible.[22]

---

reverse-*Franks*['] hearing is not automatically granted upon request."); *see also State v. Backus*, 2002 WL 31814777, at *6 (Del. Super. Nov. 18, 2002) (noting Defendant filed a "Supplemental motion"). At the *Franks'* hearing, Defendants would be required to prove by a preponderance of the evidence that the officer knowingly, intentionally, or with reckless disregard for the truth made statements in, or omitted facts from, the affidavit that were material to finding probable cause. *See Ridgeway v. State*, 67 A.3d 1023, 2013 WL 2297078, at *3 (Del. May 23, 2013) (TABLE); *Jensen v. State*, 482 A.2d 105, 113-114 (Del. 1984). Nevertheless, the Court takes a moment to mention that a reviewing court does not have the leisure of "hindsight" when questioning an officer's inclusions or omissions, *State v. Smith*, 2016 WL 3610242, at *3 (Del. Super. June 27, 2016). Further, the "affidavit need not contain 'the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip,' and the police must exercise a degree of selectivity in deciding what facts to include in a warrant application." *Rivera v. State*, 7 A.3d 961, 970 (Del. 2010) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)).

[18] *Flonnory v. State*, 109 A.3d 1060, 1062 (Del. 2015) (citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 625 (1989)).

[19] *Fink v. State*, 817 A.2d 781, 786 (Del. 2003) (citing U.S. CONST. AMEND. IV, DEL. CONST. ART. 1, § 6).

[20] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).

[21] 11 *Del. C.* § 2306.

[22] 11 *Del. C.* § 2307.

8

The Delaware Supreme Court has held that sections 2306 and 2307 "contemplate a 'four-corners' test for probable cause."[23] Hence, an "affidavit in support of a search warrant must set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed. . . ."[24] Regarding a charge of driving under the influence, the magistrate must find "probable cause to believe that Defendant's blood would yield evidence of consumption of alcohol beyond the legal limit, or sufficient alcohol content to support a charge of driving while under the influence of alcohol."[25] Recently, the Delaware Supreme Court re-articulated a magistrate's duties in evaluating the affidavit:

> The magistrate may only consider the information contained within the four corners of the affidavit. "[A] neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit." . . . The officer is "only required to present facts which suggest, when *those facts* are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime." The affidavit need not rule out potentially innocent explanations for a fact. Probable cause may be found so long as the facts presented in the affidavit are "*sufficient in themselves* to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."[26]

In determining whether probable cause exists to obtain a search warrant, Delaware courts apply a "totality of the circumstances" test.[27]

When reviewing the magistrate's decision, the Superior has cautioned:

> [T]his Court is required to give "great deference" to a magistrate's determination of probable cause and the review should not "take the form of a de novo review." The reviewing court, however, must determine whether the magistrate's decision "reflects a proper analysis of the totality of the circumstances." Affidavits of probable cause are subject to "much less rigorous standards than those governing the admissibility of evidence at trial ..." Our Supreme Court has "eschewed a 'hypertechnical' approach to reviewing a search warrant affidavit."[28]

---

[23] *Dorsey*, 761 A.2d at 811.
[24] *Fink*, 817 A.2d at 787.
[25] *Rybicki v. State*, 2014 WL 637004, at *2 (Del. Super. Jan. 14, 2014), *aff'd*, 119 A.3d 663 (Del. 2015).
[26] *Rybicki v. State*, 119 A.3d 663, 668–69 (Del. 2015), *reargument denied* (Aug. 5, 2015) (footnotes omitted).
[27] *Fink*, 817 A.2d at 787.
[28] *State v. Dopirak*, 2017 WL 3129234, at *1 (Del. Super. July 24, 2017) (footnotes omitted).

While the Delaware Supreme Court has emphasized the deference afforded to the magistrate, it has also advised that there must be a "logical deductive basis" for the neutral magistrate's decision.[29] Importantly, "[u]nlike in a challenge of a warrantless seizure, in a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of proving that the challenged search or seizure was unlawful."[30]

The affidavit that Trooper Galiani submitted to the Justice of the Peace Court magistrate, in its entirety, states:

> On 11/27/2016 at approximately 0131 hrs I responded to I-495 in the area of Edgemoor Rd. in reference to a Motor vehicle collision Involving 3 vehicles. Upon arriving the driver and it's [sic] occupants fled the scene of the collision. Troop 1 units responded to Wilmington ER in reference to 2 subjects walking into the emergency room with injuries from a motor vehicle collision. Tpr. Lawson [badge number omitted] made contact with the driver of the vehicle S/Dartanya Murray [date of birth omitted]. S/Murray stated to Tpr. Lawson that she [sic] driving the vehicle and was coming home from her sister's Birthday in the Philadelphia area and that she had been drinking alcohol there. Tpr. Lawson stated that S/Murray [sic] eyes were glassy and bloodshot. Tpr. Lawson also made contact with the passenger of the vehicle PC/Edmund Triplett [date of birth omitted]. PC/Triplett stated to Tpr. Lawson that he was in the front passenger seat of the vehicle and S/Murray was driving at the time of the collision. S/Murray was unable to perform any field tests due to her injuries.

In her Motion, Defendant argues that the affidavit is insufficient on its face to support a finding of probable cause.[31] Particularly, Defendant notes that the affidavit does not state that there was an odor of alcohol on her person or at the scene.[32] Since this case does not concern field test results or results from a portable breathalyzer test ("PBT"), Defendant relies on *State v. Mulholland* and *State v. Sharp* to support her position.[33] In the State's Response, the State relies on the deference

---

[29] *Dorsey*, 761 A.2d at 812.
[30] *Dopirak*, 2017 WL 3129234, at *1.
[31] Defendant's Motion at 5.
[32] *See id.* at 4.
[33] Defendant's Motion at 5-6 (citing *State v. Mulholland*, 2013 WL 3131642, at *6 (Del. Com. Pl. June 14, 2013); *State v. Sharp*, 2014 WL 3534945, at *4 (Del. Com. Pl. May 5, 2014)).

10

afforded the magistrate's decision and its belief that "the following indices of intoxication: (1) a motor vehicle accident from which the Defendant fled; (2) statements indicating that the Defendant was driving the vehicle in question; (3) admissions to drinking by the Defendant; and (4) that the Defendant had bloodshot, glassy eyes" support a finding of probable cause.[34] The State—mischaracterizing Defendant's position—continues by noting that a lack of field test results or the administering of a PBT are not required for a Court to find probable cause.[35] Referencing Defendant's reliance on case law, the State argues that *State v. Aldossary* limited *State v. Mulholland* to the latter's facts of a cold and snowy night.[36] Instead, the State analogizes to *State v. Gilbert*, *Bease v. State*, and *State v. Maxwell* as dispositive.[37] In Defendant's Reply, she asserts that the State's reliance on these cases is misplaced, as no odor of alcohol was denoted in Trooper Galiani's affidavit.[38]

Based on a comprehensive analysis of the case law and the Court's balancing of the strong deference afforded the magistrate's determination with the facts as presented in the affidavit, the Court finds that the four-corners of the affidavit do not support a finding of probable cause sufficient to issue a warrant to draw Defendant's blood.

The State is correct that this Court limited *Mulholland* to its facts in *Aldossary*.[39] However, this Court found probable cause in *Aldossary* based on an unique accident, bloodshot and glassy

---

[34] State's Response at 7. Based on Trooper Galiani and Trooper Lawson's testimony, Defendant only made one admission to drinking.

[35] *See id.* at 7-8. Defendant is not arguing that the lack of results dooms the finding of probable cause, but that there are no supporting results in this case. *See* Defendant's Motion at 5.

[36] State's Response at 8 (citing *State v. Aldossary*, 2014 WL 12684303, at *4 (Del. Com. Pl. Apr. 10, 2014)).

[37] State's Response at 7-8 (citing *State v. Gilbert*, 2017 WL 2256624, at *2 (Del. Com. Pl. May 15, 2017); *Bease v. State*, 884 A.2d 495 (Del. 2005); *State v. Maxwell*, 624 A.2d 926 (Del. 1993)).

[38] Defendant's Reply at 10.

[39] *State v. Aldossary*, 2014 WL 12684303, at *4 (Del. Com. Pl. Apr. 10, 2014) ("Conversely, in *State v. Mulholland*, [2013 WL 3131642] this Court found: 1) a traffic violation; 2) admission to drinking; 3) odor of alcohol; 4) bloodshot eyes; and 5) failed one-leg stand test did not establish, under the totality of the circumstances, probable cause for an arrest. The Court in [*Mulholland*] took note that the events surrounding the matter occurred on an extremely cold night with snow on the roadway. Such conditions were not present in this matter, and *this Court thus contains the Mulholland decision to its facts*." (footnotes omitted) (emphasis added)).

11

eyes, slurred speech, and an odor of alcohol; emphasizing the fact that Defendant "had bloodshot, glassy eyes *and* smelled of alcohol" and her speech "was noticeably slurred."[40] If such facts existed in the present case to support a temporal inference that Defendant was under the influence when driving, then this Court would agree with the State's position.[41]

Nevertheless, the State has presented no example, and the Court has found no case, where the affiant relied on such limited facts as in the case *sub judice*.[42] While the affidavit states that Defendant admits to driving the vehicle and accuses Defendant of fleeing the scene, the only facts listed in the affidavit supporting a claim of driving *under the influence* are: (1) her admission to consuming alcohol at her sister's birthday party in the Philadelphia area, which occurred at some unspecified time prior to the accident, and (2) her bloodshot and glassy eyes at approximately 1:40 a.m. in the morning. The affidavit does not even contain sufficient information to ascribe liability to Defendant for the accident,[43] which can be utilized by the magistrate in finding probable cause.[44]

---

[40] *See id.* at *5 (emphasis added).

[41] *See Bease v. State*, 884 A.2d 495, 499-500 (Del. 2005) (holding probable cause to arrest was present when the defendant "spoke in a rapid manner to Trooper Penrod, smelled of alcohol [from " 'approximately two feet' away"], admitted that he consumed [" 'some chardonnay or beer' "] the night before, had bloodshot and glassy eyes, and had just committed a traffic violation by making an improper lane change in an abrupt manner"); *Miller v. State*, 4 A.3d 371, 374-75 (Del. 2010) ("Excluding the results from the PBT and HGN tests, the alcoholic odor from two or three feet away, glassy watery eyes, failed walk-and-turn and one-legged standing tests, and Miller's admission of having consumed two beers about two hours before sufficiently supported probable cause that Miller drove under the influence of alcohol."); *State v. Maxwell*, 624 A.2d 926, 930-31 (Del. 1993) (reversing the trial court's failure to find probable cause when the defendant lost control of the vehicle during a turn, admitted to drinking at the scene, "appeared dazed," a "strong odor of alcohol" emanated from the overturned vehicle, and "several empty and full containers of beer" were present in the vehicle).

[42] *See infra* footnotes 43-58.

[43] *See Lambert v. State*, 110 A.3d 1253, 1256 (Del. 2015) ("Lambert also argues that 'the four corners of the Affidavit do not suggest that he was the motorist at fault for causing the accident' . . . . The Affidavit states that there was damage to the rear of the Trailblazer and that Lambert admitted hitting the Trailblazer. The only reasonable inference from those facts is that Lambert's motorcycle struck the rear of the Trailblazer.").

[44] *See id.* at 1256-57 ("When viewed in the totality of the circumstances, the facts in the Affidavit and the reasonable inferences drawn therefrom provided the magistrate with sufficient information to support a finding that there was probable cause to believe Lambert had operated his motorcycle while under the influence of alcohol. First, Lambert collided with the rear-end of the Trailblazer. Second, Lambert had watery, bloodshot eyes. Third, Cpl. Lowman detected the odor of alcohol on Lambert's breath." (footnote omitted)).

Based on the totality of the circumstances, the affidavit in this case is incomplete to support a finding of probable cause. First, the Delaware Superior Court has stated that irritated eyes do not support an inference that the driver was under the influence.[45] Second, when a defendant admits to drinking before an accident, Delaware precedent expressly or implicitly tethers the statement to temporal evidence.[46] Indeed, an admission unconnected to a point in time can create a temporal inference if the speaker admits to *current* intoxication.[47] Even an admission that the speaker "had a lot to drink" conceivably creates such a temporal inference.[48]

Conversely, the Court is struck by what facts are not contained in the affidavit: no statement of "egregious erratic driving,"[49] no facts regarding when Defendant had consumed alcohol,[50] no reference to how many drinks Defendant had consumed,[51] no evidence of any alcoholic beverages

---

[45] *See State v. Heath*, 929 A.2d 390, 409 (Del. Super. 2006) ("The Court does not believe that this Defendant's bloodshot eyes can be a basis for reasonable suspicion. This is not to say that bloodshot eyes can never be probative of criminal activity. For example, if the Defendant's bloodshot eyes were combined with an odor of drugs or alcohol, a more persuasive argument might exist. However, bloodshot eyes can "result from a variety of non-criminal circumstances, such as tiredness, allergies, or just rubbing of the eyes." When this stop occurred, it was night, and there was no evidence that the Defendant was under the influence of drugs or alcohol." (footnote omitted)). For reasons unrelated to the present case, the Superior Court has declined to follow certain facets of *Heath*'s analysis. *See, e.g., State v. Turner*, 2016 WL 105668, at *3 (Del. Super. Jan. 5, 2016) (refusing to follow *Heath*'s analysis in deeming the stop pretextual and unconstitutional).

[46] *See, e.g., Lefebvre v. State*, 19 A.3d 287, 291 (Del. 2011) (defendant "admitted drinking an hour and a half before the stop"); *State v. Otto*, 1993 WL 488979, at *1 (Del. Super. Nov. 12, 1993) (facts indicate an odor of alcohol on the defendant's breath, bloodshot eyes, slurred speech, and the defendant's statement that "he had been at a bar, the Oasis Tavern, prior to the accident"). Courts generally do not require a temporal inference if the defendant refuses to submit to field sobriety tests. *See State v. Gilbert*, 2017 WL 2256624, at *3 n.19 (Del. Com. Pl. May 15, 2017) (quoting *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010)) (noting that "refusal of field sobriety tests 'may be used for any relevant purpose, including to show consciousness of guilt' ").

[47] *See, e.g., State v. Ford*, 2013 WL 2245006, at *4 (Del. Com. Pl. May 22, 2013) (defendant admits to being "too drunk to operate the vehicle").

[48] *See State v. Ori*, 2016 WL 3568356, at *2 (Del. Super. June 22, 2016) ("Defendant admitted to the Affiant that he had 'had a lot to drink.' "). This Court uses the word "conceivably" because the facts in *Ori* also included visible and audible signs at the time of the defendant's statement that he was presently intoxicated—one of which included public urination. *See id.* at *1.

[49] *See Dopirak*, 2017 WL 3129234, at *2 ("Namely, Mr. Dopirak was not merely changing lanes while failing to signal or following another vehicle too closely. He was stopped by the officer driving in [the] wrong direction on Route 13, a divided highway. This rather egregious erratic driving, combined with a strong odor of alcohol and a refusal to submit to an intoxilyzer test or a blood draw, are sufficient facts for a magistrate to have found probable cause under the totality of the circumstances."); *see also Rybicki*, 119 A.3d at 671.

[50] *See Miller*, 4 A.3d at 375 ("Miller's admission of having consumed two beers about two hours before . . . .").

[51] *See id.*

13

in the vehicle,[52] no statements regarding slurred speech,[53] no facts evidencing trouble walking or odd behavior,[54] no facts regarding a disheveled appearance or disoriented demeanor,[55] no statement that defendant was "slumped" or "passed out,"[56] no comments regarding a "flushed face,"[57] and no odor of alcohol.[58] The addition of one or more of the above likely would have resulted in a different outcome.[59]

## IV.    CONCLUSION

For the reasons articulated above, the Court finds that Defendant has met her burden of proving by a preponderance of the evidence that the warrant should not have been issued based on

---

[52] *See State v. Bennefield*, 2016 WL 5816987, at *2 (Del. Super. Sept. 30, 2016) ("Within the four corners of the affidavit, there are ample facts to show that Defendant was intoxicated. Defendant smelled of alcohol, his eyes were bloodshot, and he was acting aggressively. He also failed the HGN test and refused to take the PBT. Moreover, several alcoholic drinks were found in the vehicle." (footnotes omitted)).

[53] *See State v. Williams*, 2012 WL 6738546, at *2 (Del. Com. Pl. Oct. 25, 2012) ("Similarly, the circumstances here provided the officer with sufficient showing of probable cause, even without field sobriety tests, given that the defendant failed to follow the orders of the police officer, was erratic in her driving actions, smelled of alcohol, slouched over her steering wheel, slurred her speech, and walked unsteadily from her car, requiring assistance.").

[54] *See id.*; *see also Ori*, 2016 WL 3568356, at *2 ("In spite of all of that, though, there undisputedly exists the accident, the odor of alcohol on Defendant's breath, and Defendant's having urinated while seated in Affiant's police vehicle.").

[55] *See Glass v. State*, 1988 WL 61582, at *1 (Del. Super. June 13, 1988) ("[T]he single vehicle accident, the odor of alcohol on the defendant's breath on two occasions and the defendant's confused and disoriented state, provided a sufficient basis for the police officer to conclude that probable cause existed to arrest the defendant and take the blood sample.").

[56] *See State v. Green*, 2015 WL 4603829, at *2 (Del. Com. Pl. May 4, 2015) ("The affidavit of probable cause also indicates that Green slurred her words and appeared to be unaware of who she was or what had happened. Additionally, Green failed the walk-and-turn test and the finger-to-nose test. The Court takes note of Green's performance on the field tests combined with her glassy eyes and slurred speech, as well as the fact that she was slumped behind the wheel and appeared to be passed out.").

[57] *See Lefebvre*, 19 A.3d at 291 (agreeing with the defendant's concession that probable cause to arrest existed prior to his performance of field tests: "Lefebvre committed a traffic offense, exhibited a strong odor of alcohol, had a flushed face and bloodshot, glassy eyes, admitted drinking an hour and a half before the stop, was somewhat flustered and argumentative with the officer, and stated prior to the one-leg stand 'I'm not that good at this sober.' " (quoting Lefebvre's Opening Brief at 19)); *see also Ford*, 2013 WL 2245006, at *4 (finding probable cause to extract blood based on a strong smell of alcohol while interviewing the defendant, glassy and red eyes, flushed face, and admission that the defendant "was too drunk to operate the vehicle").

[58] *See State v. Zanda*, 2016 WL 5660303, at *3 (Del. Com. Pl. Aug. 25, 2016) ("The evidence shows that at some time after 3:00 a.m., the defendant was driving erratically by ping-ponging within her lane of travel, driving off the roadway twice, and braking for no apparent reason. Additionally, an odor of alcohol emanated from the defendant's person. She had red and glassy eyes and constricted pupils. She failed the walk-and-turn test and one-leg stand test, along with the alphabet and counting tests.").

[59] *See Lefebvre*, 19 A.3d at 293 (noting "no precise formula exists"); *see also Esham v. Voshell*, 1987 WL 8277, at *2 (Del. Super. Mar. 2, 1987) ("Other circumstances are usually present in situations of this kind to support the finding of probable cause.").

14

the affidavit of probable cause. Because the Delaware Supreme Court has held that the "good faith" exception to the exclusionary rule is not applicable to a warrant issued without probable cause under the Delaware Constitution,[60] and a defendant cannot lean on the exception when a Delaware statute has been violated,[61] the blood results must be excluded.[62]

Additionally, the Court finds that the State has proven by a preponderance of the evidence that probable cause existed to charge Defendant under 21 *Del. C.* § 4201(a), 21 *Del. C.* § 4201(b), 21 *Del. C.* § 4203(a)(3), and 21 *Del. C.* § 4352(a).[63] The clerk shall set this case for trial at the earliest convenience of counsel.

**IT IS SO ORDERED** this 20th day of November, 2017.

_____
John K. Welch, Judge

cc:     *Ms. Diane Healey, Judicial Case Manager Supervisor*
cc:     *Ms. Michelle Jackson, Judicial Operations Manager*

---

[60] *See Dorsey v. State*, 761 A.2d 807, 820-21 (Del. 2000) ("We remain convinced that there are constitutional dimensions to the remedy for a violation of the Delaware Constitution's Declaration of Rights. Accordingly, we adhere to our prior holdings in *Rickards* and its progeny, including our most recent holding in *Jones:* exclusion is the constitutional remedy for a violation of the search and seizure protections set forth in Article I Section 6 of the Delaware Constitution.").

[61] *See State v. Lambert*, 2015 WL 3897810, at *6 (Del. Super. June 22, 2015), *aff'd*, 149 A.3d 227, 2016 WL 5874837 (Del. Oct. 7, 2016) (TABLE).

[62] *See State v. Felton*, 1991 WL 113337, at *6 (Del. Super. June 18, 1991).

[63] See *supra* note 15.